Tottek J.,
delivered tbe opinion of tbe court.
Tbe plaintiff, Clack, brings bis bill against tbe defendant, "White; and upon tbe matters stated in tbe bill, invokes tbe exercise of tbe injunctive power of • the court, to protect him in tbe free and undisturbed possession, use and enjoyment of a right of private way, to which be says be is entitled, over tbe defendant’s land.
The prayer of the bill was granted by tbe chancellor and tbe defendant appeals to this court.
Tbe private way is claimed by tbe plaintiff, under an order and grant from tlie county court of Giles, made in pursuance of tbe act of 1811, cb. 60. It empowers tbe county court, in a given state of facts, to grant to one citizen a right of private way over tbe land of another. Tbe plaintiff resides near Pulaski on tbe Campbellville road, and has resided there some ten years. Before that time be resided on bis plantation, where most of bis slaves and property are situated, some three miles from Pulaski, to and from which place, it is material to bis interest, that be have a right of way. Tbe defendant, "White, and Benj." Carter, own tbe intermediate lands, and refuse a right of way; White owns some five hundred ' acres, a valuable tract; tbe said Campbellville road passes over it, leaving one-third of *542 it east of the road. The private way granted to the plaintiff, is on the west side of this road, begins at a large spring, the joint property of plaintiff and defendant, and extends to the Campbellville road, a distance of some four hundred yards, over the enclosed lands of the defendant, and “passing out, to the public road, at a pair of drawbars, where was recently a gate.” The court granted to the plaintiff the right to “open said road fifteen feet wide, to keep the same in repair and to have and use the same as a private way.” This way cuts the defendant’s land, west of the public road, into two other sections of irregular and inconvenient form. The jury assessed the damages of defendant at thirty dollars, which he received, but tenders the same back in his defence to the present bill. The plaintiff owns a narrow strip of land from the spring to his farm, which makes his way complete. líe optened his private way, removing defendant’s inclosures for that purpose. The defendant replaced his fence across the private way, felled some trees across it, in order to obstruct it, and threatened the life of the plaintiff, if he offered to remove them, or to keep the road open. He resisted said order, granting the right of way and insisted that it was void.
For these injuries no action at law has been taken, but the plaintiff brings his bill in the first instance to cause the private nuisance to be removed and the defendant to be enjoined from disturbing him, the said plaintiff, in the proper and peaceable enjoyment of his right of way. Such aré the leading features of the case, involved, as it is, in a mass of facts not material at present to be more fully stated.
Several questions are made, by defendant’s counsel, *543 upon tbe chancellor’s decree; and it is insisted, that it is erroneous.
First: That the plaintiff has a remedy at law.
Second: That the fact of nuisance should first be established at law.
Thii'd: That the county court had no power under the constitution to grant the private way.
Now the right of way which the statute intends to confer is not merely personal or in gross, but is appen-dant and annexed to the estate. It is claimed and granted in virtue of an ownership of land and must be connected with it. The pi’ivate way was obstructed by the owner of the land over which it passes. The injury therefore, is strictly a private nuisance; 3 Bl. Com., 218, 241.
As to the remedy, it may be by the mere act of the injured party; for he has right to enter peaceably upon another’s land and abate the nuisance; 3 Bl. Com., 6; Adam’s Equity, 24; or, by action on the case for damages; in which the party shall recover satisfaction for the injury sustained; but cannot, thereby, remove the nuisance. It is true, that evei’y continuance of a nuisance, is held to be a fresh one; for which another action will lie and other damages may be recovered; and to give the • greater effect to the remedy the jury may, in a second action, punish an obstinate defendant by giving exemplary damages. But still the injury remains. It could only be removed, in a case of private nuisance, by the assise of mdscmce, a writ not adapted to our mode of judicial procedure; 3 Bl. Com., 221.
It is cleai*, that the remedy at law, for a private nuisance, is imperfect and inadequate, and that a complete and perfect remedy can only be had in a court *544 of equity. The remedial justice of the court of equity, may be promptly applied before great and irreparable injury has been done. It may remove the present nuisance, and perpetually enjoin the party from renewing it in future. It avoids a multiplicity of suits, and oppressive and expensive litigation. Upon these, and other grounds, the jurisdiction of the court, in a case of continuing, permanent or recurring, private nuisance, is firmly established. But no injunction will lie, if the injury bo such as may be compensated in damages] as where it is merely transient and temporary in its character; 2 Story Eq. Jur., § 925; Earl of Ripon vs. Hobart, 1 Cooper, sel. cases, 333; Garner vs. Village of Newburgh, 2 J. C. R., 161.
In the last case, Mr. Kent says, the inference rests on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right, which, upon just and equitable grounds, ought to be prevented. To the same effect are Caldwick vs. Knott, 10 Yerg., R., 210; and Vaughn vs. Law, 1 Humph. R., 131. In this latter case, Greene, J., delivering the opinion of the court, says: “ In a case where the right is clear, and the existence of the nuisance manifest, and the injury is of a character that cannot be compensated in damages, a court of chancery interposes to prevent the mischief. In such case, a trial at law is not necessary in order to give the court jurisdiction. In Adams’ late work on the doctrine of equity, it is said, “there is a jurisdiction in equity to enjoin, if the fact of nuisance be admitted, or established, at lem; ” Adams’ Equity, 211 ; and several cases are cited. But we think that the rule is well and truly stated in Vaughn vs. Law. Certainly. *545 the admission of the party is perfectly conclusive; but, if the fact of nuisance manifestly appear, from certain and reliable proofs, we see no reason why it should be first established in a court of law, if that be the only objection.
In the present case, the right depends upon the grant made by the county court, affirmed on appeal, in the circuit court. We do not assume, in this collateral suit, to revise that proceeding. If it be merely irregular, and not void, it remains in force and effect, until reversed. upon error. We see, indeed, no valid objection to the mode of procedure; and if the court had the power, under the statute, to grant a private way over the defendant’s land, then it is well granted, and the plaintiff is seized of a legal title to it.
It is also admitted in defendant’s answer, that the way was opened, and that he afterwards obstructed and closed it. So, that both the legal title to the way, and its obstruction by defendant, appear in the present record. But it does not follow as a corrollary, that, therefore, the injunction will lie. The special injunction is not a writ of right, but it rests in the sound discretion of the court, and hence, Mr. Story says: “No injunction will be granted whenever it will operate oppressively or inequitably, or contrary to the real justice of the case;” 2 Story Eq. Jnr., § 959. It may safely be assumed, that the injunction will not lie, unless the right be clear and certain, and rests upon just and equitable grounds. If the county court had the power to grant a private way to a private citizen, over the land of another, it was a most delicate power, and should be exercised only, in case of imminent necessity. It cannot apply to a case of mere interest and convenience.
*546 Now, to test the present case by these just and reasonable rules: The public way and the private way, cut the defendant’s land into three irregular and inconvenient sections. The private way is opened, as a lane over his land ; it separates his house from the valuable spring before mentioned, and passes near his houses. He is denied the privilege of gates at the termini of the private way; a privilege that is granted in some instances, even in case of public roads, and is put to the inconvenience and expense of making separate enclosures of the ground over which it passed. A valuable farm is thus seriously injured, and the indemnity assessed by the jury is fixed at thirty dollars, which a number of witnesses, some of them of the jury, say, that the injury cannot be less than four hundred dollars.
Certainly this private way .does not rest upon such just and equitable grounds, as commend it to the special protection of a court of conscience. We may further observe, that it was not the nearest way; nor so laid out as to do the least injury to the owners of the lands. For it appears that it might have been located principally upon their dividing lines. Nof do we think that there was such strong and imminent necessity for the private way, as the strictness of the rule would require. Certainly it was, as surveyed, the best and most convenient way for the plaintiff. But there were other ways, a little further,' or not quite so even, which might have answered his purposes, and been more consonant with the interests of others.
Considering the case upon its merits, therefore, and conceding for that purpose, the contested power of the county court, to grant the private way, yet, we do not *547 think, that in justice, equity and reason, it is a proper ease for a special injunction.
Third: But tbe counsel for defendant takes still higher ground, and insists that the act of 1811, cli. 60, is repugnant to the constitution, and void. This act confers upon the county court the power to grant a “private road,” in case the lands of any person b'é surrounded by the lands' of any other person, or persons, who refuse to allow a private road over their lands. The court may appoint a jury of view to mark out the road, assess the damage done to the owner of the land, and report the same to the court, which court shall have power to grant an order to the petitioner to open such road, not exceeding fifteen feet wide, and to keep the same in repair.
It is a grant of a private way, annexed and appen-dant to the petitioner’s land. Now, what is the nature of this right, and how is it acquired at the common law? It is an incorporeal hereditament; an easement upon the land of another, and not an interest in the land itself; 5 Barn. & Cress., 221. It consists in a “right of private way over another man’s land, and may arise either by grant of the owner of the soil, or by prescription, which supposes a grant, or from necessity;” 3 Kent. Com., 419; 3 Bl. Com., 35, and note 27.
A way of necessity, is but a way by grant. If a man sell me land that is wholly surrounded by his own, I am entitled to a way of necessity over his land, to come to my own; though it was not expressed in the grant. It is implied as an incident to the grant, and passes imder it; Eor, without the way, the grant could have no effect; and it is a general rule, that when the use of a thing is granted, every thing is granted *548 which is necessary to its proper use and enjoyment; Co. Lifct., 56; 2 Com., 56. Sergeant Williams says, the way of necessity is so called, because it is a necessary incident to the grant; and he is of ojúnion that it is founded entirely upon grant; 1 Saund. R., 323, note 6; 3 Kent. Com., 4-24. It is not, therefore, to be taken in a general and independent sense; as that it is necessary for me to have a right of way over my neighbor’s land. I can only have it as in case of other property; by his consent, express or implied.
A way of necessity, therefore, like other private ways, is founded in grant by the owner of the land over which it -passes; and it can have no existence upon any general idea that it is convenient or even necessary to a person to have a private way. Now, the statute confers upon the county court the power to grant a right of way, against the will of the person who owns the land. It takes from him, in i/ivoitum, a part of his private estate, and gives it to another, as a private right, for such indemnity as a jury may assess. Now, we deny that any such power exists, under the Constitution of the State. The right to private property is under the protection of the Constitution, and is to be held as sacred and inviolable.
The legislature has no power to take or invade it for any mere private purpose, or to transfer it from one person to another against the will of the owner, whether indemnity be provided for it or not. The will of the owner is, in this respect, stronger than the legislative power, and if he refuse to grant the private way, we are not aware of any power by which. he may be enforced to grant it. If it could be held a valid power in the present instance, so it could be held in many others, *549 under tlie pretext of necessity, policy or conveneince. On the contrary, we consider it a settled doctrine, that a law, which is intended to have the effect to transfer the private property of one man to another, against his will, is powerless and void; no matter under what pretext of policy or convenience it may be made; vid. Bill of Rights; 2 Kent. Com., 13 and 339; Wilkinson vs. Leland, 2 Peters’ R., 659; Varick vs. Smith, 5 Paige R., 5; Hoke vs. Henderson, 4 Dev. R., 15; Harding vs. Goodlett, 3 Yerg. R., 41.
Nor can the power insisted on in the present case, be found in the right of eminent domain. This right, inherent in the State, can only be exercised for the public advantage ; and not for that of any mere private person. The right of eminent domain or inherent sovereign power, says Mr. Kent, gives to the legislature the control of private property for public uses, and for public uses only; 2 Kent., 339.
It undoubtedly must rest, says the same author, as a general rule, in the wisdom of the Legislature, to determine when public uses require the assumption of private property; but if they should take it for a purpose not of a public nature, as if the legislature should take the property of A and give it to B, or if they should vacate a grant of property or of franchise, under the pretext of some public use or service; such cases would be gross abuses of their discretion and fraudulent attacks on private rights, and the law would clearly be unconstitutional and void; 2 Kent’s Com., 340. In Taylor vs. Porter, 4 Hill's N. Y. Rep., 140, the precise question now before us, was ably considered, and it was held, that a statute similar in every respect, to ours, was unconstitutional and void. Mr. Kent, referring to the judg- *550 nient in that case, considered that it was founded on jnst principles, and fully approved it; 2 Kent’s Com., 339, note c. We may observe, also, that the doctrine held here, can work no great inconvenience, if that were a consideration; as pubUo roads of every grade and character, to suit the convenience of the people, may lawfully be laid out and established; vid. act of 1820, ch. 6.
By these inferior roads, of the second and third class, every neighborhood may be accommodated, and the citizen bo enabled to have a convenient way to go to mill and to market, to church and to the ballot-box.
The decree of the chancellor is reversed, and the bill dismissed.
.MoKiNNET, J., dissented on the constitutional question.