.CITY OF CHATTANOOGA *v.* STATE *et al.*

(*Nashville.* December Term, 1924.)

1. **EMINENT DOMAIN. City of Chattanooga held entitled to condemn land for street purpose pursuant to general condemnation law.**

   Under Acts Sp. Sess. 1890, chapter 1, authorizing city of Chattanooga to extend streets by condemnation, as provided by law, that city may condemn land for street purposes under Code 1858, Section 1325 et seq. (Thomp. Shan. Code, Section 1844 et seq.), relative to condemnation by corporations generally, notwithstanding Code 1858, Section 1388 et seq. (Thomp. Shan. Code, Section 1981 et seq.), relative to opening streets or alleys. (*Post, pp.* 693-698.)

   Acts cited and construed: Acts Sp. Sess. 1890, ch. 1; Acts 1839-40, ch. 32; Acts 1851-52, ch. 13; Acts 1899, ch. 142; Acts 1879, ch. 11, sec. 20; Acts 1883, ch. 167; Acts 1921, ch. 163;

   Case cited and approved: Knox County v. Kennedy, 92 Tenn., 1; Memphis v. Hastings, 113 Tenn., 142; Railroad v. Memphis, 126 Tenn., 267; Haase v. City of Memphis, 149 Tenn., 235.

   Code cited and construed: Secs. 1835, 1388 (1858); Secs. 1844, 1981 (T.-S.).

2. **EMINENT DOMAIN. Power strictly construed, and procedure prescribed by statute must be followed.**

   Power of eminent domain is strictly construed, and procedure prescribed by statute must be followed. (*Post, p.* 698.)

3 **EMINENT DOMAIN. Land, owned by state within another State, subject to eminent domain procedings.**

   State of Georgia, holding land within Tennessee, holds as any other corporation or *quasi* public corporation, and such land may be taken by city for street purposes by eminent domain proceedings. (*Post, pp.* 698-700.)

Acts cited and construed: Acts 1885, ch. 135.

Cases cited and approved: Georgia v. Chattanooga, 264 U. S., 472; Memphis State Line R. Co. v. Forest Hill Cemetery Co., 116 Tenn., 400; Mobile & O. R. Co. v. Mayor and Aldermen of Union City, 137 Tenn., 491.

Codes cited and construed: Sec. 1325 (1858); Sec. 1844 (T.-S.).

*Headnotes 1. Eminent Domain, 20 C. J., Section 43; 2. Eminent Domain, 20 C. J., Sections 304, 310; 3. Eminent Domain, 20 C. J., Section 109; States, 36 Cyc., p. 870.

## FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Oscar Yarnell, Judge.

Sam E. Whitaker and B. E. Tatum, for City of Chattanooga.

Williams & Frierson for State of Georgia; Brown & Spurlock, Joe V. Williams and Joe Brown for N. C. & St. L. Ry.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a condemnation proceeding instituted by the city of Chattanooga in the circuit court of Hamilton county to condemn land necessary for the extension of one of the streets of that city. The land through which it is

proposed to run the extension of the street belongs to the State of Georgia, and is at present leased to the Western & Atlantic Railroad or the Nashville, Chattanooga & St. Louis Railway, and is occupied and used by these railroad companies and certain sublessees. A demurrer to the petition was sustained by the trial judge, and his action was affirmed by the court of civil appeals. The city of Chattanooga filed a petition for *certiorari* to review the action of the latter court, and this petition was granted and the case has been argued here. The procedure attempted in this case was that prescribed by section 1325 et seq. of the Code of 1858 (Thompson's-Shannon's Code, section 1844 et seq.), regulating the taking of private property for works of internal improvement. Section 1325 of the Code of 1858 (Thompson's-Shannon's Code, section 1844), is as follows:

"Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privileges is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided."

Subsequent sections set out the manner and the terms upon which the land may be taken. The point of the demurrer sustained by the lower courts is that the foregoing sections of the Code do not apply to the city of Chattanooga, exercising the right of eminent domain for the extension of its streets, but that the city of Chattanooga so proceeding must follow the provisions of section 1388 et seq. of the Code of 1858 (Thompson's-Shannon's

Code, section 1981 et seq.)    The latter sections are con-
tained among the general provisions with reference to
municipal corporations in the Code of 1858, the rele-
vant sections being as follows:

"When the owner of the land through which any street
or alley or common is to be extended, requires damages
for the same, the mayor and aldermen shall appoint free-
holders, not exceeding seven in number, who, after first
being sworn, shall examine the premises and assess the
damages, and report the same to the mayor and alder-
men, who shall cause the said report to be spread upon
their minutes by the recorder.

"On payment of said damages into the office of the
recorder, for the benefit of the owner of the land, the
mayor and aldermen, first allowing said owner a rea-
sonable time therefor, may order the street, alley, or
common to be opened.

"If any person fail or refuse to open the street, alley,
or common so ordered, he shall be subject to a fine of five
dollars for every month of his failure or refusal, to be
recovered by the mayor and aldermen by suit before a
justice of the peace, to the use of the town.

"Any person aggrieved by such order for opening a
street, alley, or common, may appeal to the circuit court."
    Sections 1981-1984.

The argument made in support of the conclusion
reached below is quite plausible, but in the light of pre-
vious decisions of this and other courts, we think this
argument must be rejected.   The city of Chattanooga ap-
pears to have been first incorporated by chapter 32 of
the Acts of 1839-40.   This charter has been repeatedly
amended by acts of the legislature to all of which it is

not necessary to refer. By chapter 13 of the Acts of 1851-52, the city of Chattanooga was authorized "to open, alter, abolish, widen, extend, establish, grade, pave, or otherwise improve, clean and keep in repair streets, alleys and sidewalks." It seems that the power of eminent domain was not specially conferred upon the city by any act of the legislature prior to chapter 1 of the Acts of the Special Session of 1890, by which the city authorities were empowered "to procure for the benefit of said city by condemnation in the name of the mayor and aldermen, as now provided by law for such condemnation proceedings by purchase or otherwise, as now provided by law, any and all necessary property for widening or extending streets, and for enlarging and extending sewers, when necessary to do so." Section 8.

Until chapter 1 of the Acts of the Special Session of 1890, the city of Chattanooga had only such power of eminent domain as a municipal corporation acquired under section 1325 et seq. of the Code of 1858, regulating the taking of private property for works of internal improvement, or as it acquired under section 1388 et seq. of the Code of 1858, conferring the power of eminent domain upon municipal corporations generally for certain purposes. The contention of the defendants is that the provisions of section 1325 et seq. of the Code of 1858 are applicable to private corporations, as distinguished from municipal corporations, and do not apply to municipal corporations in the exercise of the right of eminent domain. It is specially insisted that section 1325 et seq. of the Code of 1858 do not apply to municipal corporations seeking to condemn land for street exten-

sions. Previous decisions of this court have ruled to the contrary.

After the enactment of chapter 167 of the Acts of 1883 providing for the construction, repairing, and buying of turnpikes, macadamized and graded, gravel roads by counties, it was held by this court that the counties of the State thereby became corporations "authorized by law to construct" turnpikes under the provisions of section 1325 of the Code of 1858 (Thompson's-Shannon's Code, section 1844), and were entitled to exercise the power of eminent domain thereunder. *Knox County* v. *Kennedy,* 92 Tenn., 1, 20 S. W., 311.

In the charter of Memphis (section 20, chapter 11, of the Acts of 1879) it is provided:

"That the private property within the taxing districts may be taken for public use in the manner now provided by law for the application of private property to public use."

Chapter 142 of the Acts of 1899 authorized the city to acquire by condemnation land for parks and parkways connecting said city and parks, either within or without the limits of the city, but no more than ten miles beyond the city limits. It was provided in section 2 of this act that proceedings for the exercise of the power of condemnation "shall be the same as that now provided by law for the taking of private property for public uses."

It was held in *Memphis* v. *Hastings,* 113 Tenn., 142, 86 S. W., 609, that the city was entitled to condemn land for a boulevard connecting two of the parks, and that proceedings were properly brought under section 1325 of the Code of 1858 (Thompson's-Shannon's Code, section 1844.).

It was held in *Railroad* v. *Memphis,* 126 Tenn., 267, that the city undertaking to condemn land for 'park purposes properly proceeded under the same sections of the Code.

Likewise it was held in *Haase* v. *City of Memphis,* 149 Tenn., 235, 259 S. W., 545, that the city, under chapter 163 of the Private Acts of 1921, to widen a street "conformably to the laws then existing and as to eminent domain and condemnation proceedings" should observe the provisions of section 1325 of the Code of 1858 et seq. (Thompson's-Shannon's Code, section 1844 et seq.)

We see no particular difference in the charter powers of the city of Memphis and those of the city of Chattanooga with respect to the exercise of the right of eminent domain in the extension of streets. Under chapter 1 of the Acts of the Special Session of 1890 heretofore mentioned, the city of Chattanooga is authorized to extend streets "by condemnation . . . as is now provided by law for such condemnation proceedings." As just noted the city of Memphis is authorized to take property for public use, "in the manner now provided by law for the application of private property to public use." If one municipality may proceed under the general statutes regulating the right of eminent domain, the other municipality is likewise so empowered.

Counsel attempt to differentiate the Memphis cases on the idea that the taking of property for park purposes and not street purposes was involved, and it is urged that for this reason the general condemnation statutes were held applicable rather than section 1388 et seq. of the Code of 1858 (Thompson's-Shannon's Code, section 1981 et seq.). This is a mistake, however, for in *Memphis* v.

*Hastings,* supra, the effort was not to condemn a park at all, but land for a boulevard or a street to connect two of the parks. Moreover, section 1388 of the Code of 1858 (Thompson's-Shannon's Code, section 1981) is not specially applicable to streets. It provides for the taking of land "through which any street or alley or common is to be extended." So that these sections of the Code might have been resorted to with equal propriety to secure land for a park or common.

There can be no question under our decisions that the general condemnation statutes may be invoked by a municipality authorized to condemn land for public purposes, unless other procedure is directed in the charter of the municipality. We are of opinion that the procedure prescribed in section 1388 et seq. of the Code of 1858 (Thompson's-Shannon's Code, section 1981 et seq.) is merely a cumulative remedy, and that a municipality, not restricted by its charter, may elect as between the two methods of procedure.

Of course the power of eminent domain is to be strictly construed, and the procedure prescribed by the statute must be followed. There is no reason, however, why the legislature may not prescribe two methods of procedure, and this is frequently done as will appear from an examination of the authorities referred to in 20 C. J., 81.

It is further contended in behalf of the State of Georgia that under the statutes of Tennessee the city of Chattanooga is not empowered to expropriate land belonging to another State within the borders of this State. We think that this contention has likewise been adversely ruled by previous decisions of this court and of the supreme court of the United States.

In *Georgia* v. *Chattanooga,* 264 U. S., 472, 44 S. Ct., 369, 68 L. Ed., 796, it was held that the State of Georgia did not carry its sovereignty into Tennessee, and that this property was held by Georgia just as like property is held by a corporation or *quasi*-public corporation. Such being the case the property is clearly subject to condemnation under section 1325 of the Code of 1858 (Thompson's-Shannon's Code, section 1844), as cleared up by chapter 135 of the Acts of 1885.

In *Memphis State Line R. Co.* v. *Forest Hill Cemetery Co.,* 116 Tenn., 400, 94 S. W., 69, this court held that a condemnor clothed with the power of eminent domain, proceeding under these Statutes, might take the land of any person, natural or artificial—of a private corporation or of a *quasi*-public corporation—subject to the limitations declared in that case upon the right to take property already devoted to a public use. It was said that chapter 135 of the Acts of 1885 authorizing the taking of the real estate of corporations was only enacted to clear up the ambiguity arising from the provision for the taking of land of "individuals" in section 1325 of the Code of 1858 (Thompson's-Shannon's Code, section 1844).

Moreover, as heretofore stated, chapter 1 of the Acts of the Special Session of 1890 authorized the city of Chattanooga in extending its streets to condemn "any and all necessary property." While, for the reasons stated in *Mobile & O. R. Co.* v. *Mayor and Aldermen of Union City,* 137 Tenn., 491, 194 S. W., 572, the language quoted is not sufficiently definite to carry a power to take property already devoted to a public use, it does seem

sufficiently broad to authorize the city to condemn any other property.

There is no question on this appeal in error of taking land already devoted to a public use. The hearing was on demurrer, and under the allegations of the petition the particular property sought to be condemned is not devoted to a public use.

Reverse and remand for further proceedings.