# E. C. VINSON et al. v. NASHVILLE, CHATTANOO-GA & ST. LOUIS RAILWAY. —321 S. W. (2d) 841.

Middle Section, Nashville.  October 31, 1958.

Certiorari denied by Supreme Court March 12, 1959.

Gracey, Buck, Maddin & Cowan and Hardin H. Conn, Nashville, for complainants, E. C. Vinson and W. L. Timmons.

Hooker, Keeble, Dodson & Harris, Nashville, for defendant, Nashville, Chattanooga & St. Louis Ry.

FELTS, J.   Complainants, developing a suburban subdivision, brought this suit to condemn a 50-foot right of way over defendant's railroad tracks for a public road grade crossing. They alleged this was their only

adequate and convenient outlet from their land to a public road and they had a right to take it under our statute providing for easements of way of ingress and egress for lands cut off and shut in from a public road (T. C. A. secs. 54-1902 to 54-1917).

Defendant denied they had such right, and averred that inasmuch as they already had here a 20-foot farm road or private crossing, affording them an adequate and convenient outlet to a public road, they had no right under the statute to take an additional right of way for a public road grade crossing; and, moreover, that such a crossing here would be extremely dangerous to public travel.

The case was heard before Chancellor Lentz. He found that complainants were not seeking an adequate and convenient outlet for ingress and egress, but to enlarge their 20-foot easement or private road crossing to a 50-foot right of way for a public road grade crossing, in order to meet the County Planning Commission's requirement for its approval of their plan for the subdivision; and he held the statute did not authorize such relief, and dismissed their bill. They appealed to this Court.

Complainants were dealers in real estate and bought land to exploit it as a residential subdivision. It was a farm of 197 acres in Davidson County. Defendant's railroad (main line and spur track) runs through it so that 123 acres lie on the east side and 74 acres on the west side of the tracks. Since 1907 there has been a 20-foot farm road crossing the tracks, affording an adequate and convenient outlet from the west part of the farm to the east part of it and thence to a public road.

That road is the McGavock Pike, which runs from State Highway No. 1 (Murfreesboro Road) to the east part of this farm, and the County Highway Department has planned to extend it across the west part of the farm and thence to the Antioch Pike, by constructing an overpass or overhead crossing over the railroad near this private crossing and a bridge over Mill Creek, which runs along the north, west, and south sides of this part of the farm. The county has already acquired the right of way for this extension.

Of the west part of the farm only 24 acres next to the railroad were fit for the subdivision, the other 50 acres next to the creek being low and subject to overflows. Complainants' plan for the subdivision included this 24 acres west of the railroad and the 123 acres east of it. They could not proceed with the plan—could not record it or lawfully sell any of the lots—until the plan was approved by the County Planning Commission. One of its requirements was that each road should have at least a 50-foot right of way and be dedicated as a public road and accepted as such by the county.

So, in order to meet this requirement, complainants' plan provided for taking, at this private crossing, a 50-foot right of way for a county public road grade crossing. The Commission tentatively approved the plan on condition that complainants obtained the 50-foot right of way for this public grade crossing and that such crossing be used only until the overpass was completed. But it later withdrew its approval, when defendant refused to grant complainants the right of way, and because it was uncertain when the county would complete the overpass.

This public grade crossing would be on defendant's main line and spur track near its Vultee yards. The tracks here are in a curve in a cut, limiting sight distance. All the switching to and from these yards, plus the large number of daily through train movements, would pass over this crossing. For these reasons, it would be highly dangerous to both highway and rail traffic. Owing to the danger and expense incident to such a crossing, defendant declined to grant complainants the right of way; hence this suit.

The statute on which complainants base this suit is the act of 1921 (ch. 75), is similar to the act of 1868-69 (ch. 14), and both were re-enacted in Tennessee Code Annotated, chapter 19 (secs. 54-1901 to 54-1917), entitled "Private Roads". The pertinent part of the first section of the act of 1921 is in these words:

"54-1902. *Condemnation to secure way of ingress and egress—Jurisdiction—Joinder of parties in action.* — Any person owning any lands, *ingress* or *egress* to and from which is *cut off* or *obstructed entirely from a public road* or highway by the intervening lands of another, or who had *no* adequate and convenient *outlet from said lands to a public road* in the state, by reason of the intervening lands of another, are [is] given the right to have an easement or right-of-way condemned and set aside *for the benefit of such lands* over and across such intervening lands or property. * * * (Italics ours.)

This act goes on to prescribe the procedure, and provides that if there be no cause why such easement should not be granted, the court shall order a jury of view to lay off the roadway and assess the damages for the easement

taken, and petitioner shall pay such damages and title to the easement shall *vest in him* as owner of the dominant tenement to which the easement is appurtenant (T. C. A. secs. 54-1904 to 54-1917). The latter section is as follows:

"54-1917. *Easement belongs to owners of lands benefited — Reversion when not used.*—Such easement or right-of-way *shall belong to the owners of the lands* benefited thereby, and continue as long as same is *used and maintained by them,* their heirs or assigns, but upon same falling into non-use or when same is not maintained or kept up, it shall cease and the original owner or owners of the servient land, their heirs or assigns may take possession of the same to the exclusion of all other parties" (Italics ours).

Thus, this act confers the power of eminent domain upon one private person to take another's property upon (1) the condition and for the (2) purpose stated: (1) where his land is "cut off or obstructed entirely" by the other's land from *"ingress or egress"* to a public road, so that he has no adequate and convenient outlet from his land to such road; and (2) the purpose is to give him an adequate and convenient outlet from his land to a public road, for ingress and egress, but for no other purpose.

It has been said that "the language [used in sec. 54-1902] covers every situation where a party is without an adequate and convenient outlet to a public road". Debusk v. Riley, 154 Tenn. 381, 384, 289 S. W. 493, 495. But the act does not apply where such party already has such an adequate and convenient outlet. Nor does it "warrant condemnation as a mere matter of conveni-

ence". Lay v. Pi Beta Phi, 30 Tenn. App. 423, 426, 207 S. W. (2d) 4, 6, and cases there cited.

It is clear that the only right given such a party by the act is a right to an adequate and convenient outlet to a public road for *"ingress and egress", and for no other purpose;* and that such outlet or easement of way is a private and not a public way—private in the sense that he pays for it, takes title to it and owns it as appurtenant to his estate (secs. 54-1913 to 54-1917). See Clack v. White, 32 Tenn. 540, 548; Fite v. Gassaway, 27 Tenn. App. 692, 699-700, 184 S. W. (2d) 564.

On the other hand, the taking of land for a county public road is governed by other and different statutes (T. C. A. secs. 23-1501 et seq.; 54-904 to 54-925). Such a proceeding may be brought by any person (sec. 54-905) or by the county, but the county pays the damages for the right of way, takes and holds the title to it in trust for the public, and maintains the road for the public. Sumner County v. Interurban Transportation Co., 141 Tenn. 493, 497-498, 213 S. W. 412, 5 A. L. R. 765; Clouse v. Garfinkle, 190 Tenn. 677, 683-685, 231 S. W. (2d) 345.

We think complainants do not bring themselves within the statute. As we have seen, their land is *not* "cut off or obstructed entirely from a public road". But they already have, in this 20-foot road or private crossing, an adequate and convenient outlet from their land to a public road—adequate and convenient for ingress and egress.

Complainants, however, insist that though this private road is an adequate and convenient outlet for their land used as a farm, it is not adequate and convenient for their subdivision; that it is a fundamental principle that they

are entitled to put their land to its highest, best, and most profitable use; and that this act should be viewed in the light of that principle and liberally construed so as to allow them a right of way adequate and convenient for such use—the 50-foot right of way for a county public road, as required by the Planning Commission.

■ It is true complainants are entitled to make the best possible use of their property, but they have no right to take defendant's property for such use, or for any use but that authorized by the statute; and in determining the extent of that use, the statute is to be strictly construed against them and in favor of defendant.

■ This is so because the power of eminent domain is against common right and all grants of such power are to be construed strictly against the condemner and liberally in favor of the rights of property. 1 Lewis on Eminent Domain (3rd ed.), secs. 388, 390, 394; Clouse v. Garfinkle, 190 Tenn. 677, 683, 232 S. W. (2d) 345; Rogers v. City of Knoxville, 40 Tenn. App. 170, 289 S. W. (2d) 868, 871. City of Chattanooga v. State, 151 Tenn. 691, 698, 272 S. W. 432; Swicegood v. Feezell, 29 Tenn. App. 348, 352-353, 196 S. W. (2d) 713.

''Of course the power of eminent domain is to be strictly construed, and the procedure prescribed by the statute must be followed'' (City of Chattanooga v. State, supra). [151 Tenn. 691, 272 S.W. 434] Swicegood v. Feezell, supra.

■ It is clear that, following the procedure prescribed by this statute, strictly construed, the court could not decree the relief sought by complainants—could not decree them a right of way for a county public road, as

required by the Planning Commission. In such public road title to the easement or right of way would have to be decreed, not to complainants, but to the county to be held by it in trust for the public and the road to be maintained by it for the public; whereas under the statute, the right of way shall be decreed, and *"shall belong to the owners* of the lands benefited thereby" and shall continue as long as it is *"used and maintained by them"*.

◼ Complainants contend, however, that the roadway authorized by the statute is a public, and not a private, road; and for this contention they rely on Bashor v. Bowman, 133 Tenn. 269, 272, 180 S. W. 326; Derryberry v. Beck, 153 Tenn. 220, 223, 280 S. W. 1014.

We think neither of these cases is in point, or affords any support for complainants' claim. The only question involved in those two cases was whether the act under consideration was invalid, as violating the constitutional principle that private property cannot be taken for private purpose but only for public use.

The act involved in the Bashor case was the act of 1868-69 (now T. C. A. sec. 54-1901), and the easement authorized by it was described as a *"private* road". It was upheld, however, on the theory that such road should be deemed public, in view of 1958 Code section 1182 (now T. C. A. sec. 54-901), providing that all roads laid out agreeably to law "are to be deemed public roads". The Court pointed out that similar acts had been upheld in other states as providing ways of necessity, upon the idea that they enabled the citizen to discharge his duties to the public in attending courts, elections, churches, etc.

The act considered in Derryberry v. Beck was the act of 1921 (now T. C. A. secs. 54-1902 to 54-1917), authoriz-

ing private roads for ingress and egress. That act was likewise sustained upon the reasoning of the Bashor case. The Court stated that the act was upheld upon the principle that power of eminent domain may be lawfully granted for opening such a private road, since it becomes, upon its opening, a public road under the statute mentioned (1858 Code sec. 1182, T. C. A. sec. 54-901).

█ It is a familiar principle that a case is authority for the point decided, and nothing more, and that general expressions in an opinion are to be limited to the case with which the court was dealing. Shanks v. Phillips, 165 Tenn. 401, 410, 55 S. W. (2d) 258; Nat'l Life & Acc. Ins. Co. v. Eddings, 188 Tenn. 512, 523, 221 S. W. (2d) 695; Burns v. Duncan, 23 Tenn. App. 374, 388, 133 S. W. (2d) 1000.

So, in the Bashor and Derryberry cases, when the court said the roadways authorized by these acts were to be deemed "public" roads, this expression must be confined to the point there decided, and must be understood as meaning that such roadways were public only in the sense that the acts authorizing them did not violate the constitutional principle that private property cannot be taken for private purpose but only for public use.

Certainly such expression cannot be taken to mean that such roadway is public in the usual and ordinary sense of the term "county public road", which, as we have seen, means a road owned, controlled, and maintained by the county. Nor could the court have intended such meaning under the act of 1921, for that act expressly provides that the roadway *"shall belong to the owners"* of the dominant tenement and continue as long as it is *"used and maintained* by them", thereby excluding the

idea that such a road can be a public county road in the ordinary and usual sense.

For these reasons we fully concur in the Chancellor's findings and conclusions. All of the assignments of error are overruled, the Chancellor's decree is affirmed, and the costs of the appeal are adjudged against appellants and the surety on their appeal bond.

Hickerson and Shriver, JJ., concur.