IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2002 Session

STATE OF TENNESSEE, ET AL. v. ROGER D. HAYWOOD, ET AL.

Appeal from the Circuit Court for Williamson County
No. II-2K082     J. Russ Heldman, Judge

No. M2000-01400-COA-R3-CV - Filed August 28, 2002

The Trial Court held that National City Mortgage Company ("National"), which services the mortgage on the property at issue, and its attorneys violated Tenn. R. Civ. P. 11.02 and imposed sanctions against them in this condemnation proceeding. National and its attorneys appeal the Trial Court's Rule 11.02 sanctions. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Clifton E. Darnell and Larry W. Johnson, Atlanta, Georgia, for the Appellants, National City Mortgage Co., Morris, Schneider & Prior, L.L.C., and Larry W. Johnson.

Robert H. Jennings, Jr., Nashville, Tennessee, and Roger Horner, Brentwood, Tennessee, for the Appellees, State of Tennessee, on relation of The Commissioner of the Department of Transportation, for and on behalf of Said Department, and The City of Brentwood.

## OPINION

## Background

On February 11, 2000, the City of Brentwood and the State Department of Transportation ("Petitioners") filed a Petition for Condemnation ("Petition"), seeking to take, by eminent domain, a portion of a tract of land ("Property") located on Concord Road in Brentwood, Tennessee. The Property is owned by Roger D. Haywood and Sonya M. Haywood. The Petition also named National as a Defendant. National services the Haywoods' mortgage for their mortgage holder.[1] The Petition cited the following eminent domain statutes as authority for the taking, Tenn. Code Ann. §§ 29-17-201, *et seq.,* 29-17-801, *et seq.,* and 54-5-104, *et seq.* The Petition also stated the condemnation was for a public purpose, specifically road work to widen Concord Road and a relocation of public utilities along that road.

On the same day the Petition was filed, Petitioners tendered $12,500 to the Trial Court. This $12,500 was the amount Petitioners determined to be just compensation for the taking of the Property. Petitioners also filed Notices, served upon each defendant, which informed the defendants, pursuant to Tenn. Code Ann. § 29-17-803, that if they objected to Petitioners' right to condemn and take the Property, they should file a written objection within 5 days of the date Petitioners gave the Notice. The Notice also informed the defendants that a hearing was set for March 27, 2000, at which Petitioners would seek immediate possession of the Property.

The Notice addressed to National listed a Miamisburg, Ohio address, which was the address listed on the Property's Deed of Trust. The Notice was not sent to National's registered agent for service of process in Tennessee. The Statement of the Evidence provides that both National and the Haywoods were served with the Petition and the Notice on February 17, 2000. The record shows the Notice and Petition were served upon National by certified mail, return receipt requested. The Statement of the Evidence also provides that National's return receipt was signed on behalf of National by an unidentified person and returned to the Circuit Court Clerk. Sometime thereafter, the Notice and Petition were forwarded to National's counsel. The record shows National filed no objection to the Petition within 5 days of the date the Notice was served.

On March 7, 2000, National filed an Answer and Claim ("Answer") in which National raised several defenses, including: (1) the Petition failed to state a claim upon which relief can be granted under Tenn. R. Civ. P. 12.02(6); (2) lack of *in personam* and subject matter jurisdiction; (3) the Petition was invalid since the Petitioners failed to comply with the condemnation statutes; and (4) the condemnation action violated the United States and Tennessee Constitutions since it constituted a taking by a governmental entity without just compensation.

---

[1] The Petition for Condemnation also named Williamson County as a defendant to determine what interest the county may have in the Property.

On the same day it filed the Answer, National also filed a Motion for Payment of Proceeds from Court Registry ("Motion for Payment of Proceeds") in which it asked the Trial Court to disburse to National "all funds paid into the registry . . . as just and adequate compensation for the [P]roperty. . . ." In support of this motion, National filed a brief in which it cited language in the Property's Deed of Trust as the basis of its interest in the proceeds. The brief also stated that "[t]o the best of Defendant National's knowledge, no party-in-interest disputes that this sum represents just and adequate compensation for the property and easements taken by [the Petitioners]."

Soon thereafter, Petitioners filed a Motion to Strike National's Answer. Petitioners argued the Trial Court should strike all of National's defenses because they were "unsupported by any factual statement" and because the defenses were "conclusory, repugnant, contradictory and without merit and should be stricken to permit this public improvement project to proceed without further delay." Petitioners further stated, in their Motion to Strike, that the issue of damages was not before the Trial Court and that the only pending issue was "whether the project to widen Concord Road and to relocate public utilities is for a public use and purpose and should a Writ of Possession be granted."

National filed a Motion for Continuance of the March 27, 2000, hearing stating National's counsel had a conflict with the hearing date. The Trial Court, on March 27, 2000, held the hearing as scheduled. The record shows that neither a representative of National nor its attorney appeared at the hearing. The record shows that at the hearing, on behalf of the Petitioners, engineers testified about the public purpose of the Concord Road project. One of the owners of the Property, Roger Haywood, testified about the current dangerous condition of Concord Road and that he was in favor of the project. The record shows the Haywoods did not file an objection to the taking. Furthermore, the record shows that Roger Haywood testified he had received correspondence, dated February 22, 2000, from National notifying him National had employed an attorney for the condemnation proceedings and that the attorney's fees would be added to the balance of the Haywoods' mortgage. This correspondence is not contained in the record on appeal.

Thereafter, the Trial Court entered an Order granting Petitioners' Motion to Strike and denying National's Motion for Payment of Proceeds. The Order also granted Petitioners a writ of possession of the Property. Furthermore, and of most importance to this appeal, the Trial Court, *sua sponte*, set a show-cause hearing for April 24, 2002, for National and its attorney to show cause why they were not in violation of Tenn. R. Civ. P. 11.02. The Trial Court, in the Order ("Show-Cause Order"), stated the grounds as follows:

> (1.) Filing an Answer to dismiss the Petition for Condemnation asserting a defense that the Circuit Court lacked jurisdiction of the subject matter involving an Eminent Domain proceeding. Further, said pleading stated the Court lacked jurisdiction of the person, National, notwithstanding said Defendant was served with Notice and the Petition for Condemnation, by certified mail/return receipt requested,

through the . . . Circuit Court Clerk of Williamson County. . . .

The certificate of service was returned on February 17, 2000 to the Circuit Court Clerk. The Answer of the Defendant, National, to the Petition for Condemnation was not filed until March 7, 2000. Such defenses and other regal contentions made by National has caused unnecessary delay and a needless increase in the cost of litigation and are frivolous and without merit.

(2.) Filing an Answer to dismiss the Petition for Condemnation alleging only that the Petition was invalid and unconstitutional is without merit. The Petition specifically sets out the public purpose i.e. the widening of Concord Road and the relocation of the public utility facilities. The Petition cites the Eminent Domain statutes which authorize the Petitioners T.D.O.T. and Brentwood to condemn private property for these public purposes. The claims, defenses, and other legal contentions contained in said Answer are not warranted by existing law and violate Rule 11:02 [sic] [of the] Tennessee Rules of Civil Procedure.

(3.) National files an Answer to dismiss the Condemnation Petition and the property owners desire and request that the public project proceed. Defendant, National, has advised the property owners that said owners will be required to pay the legal fees for National's attorney and said fees will be added to the mortgage held by the Defendant, National. . . .

The record on appeal shows that National's attorney appeared for the show-cause hearing. Thereafter, the Trial Court entered an Order ("Rule 11 Order") holding that National and its attorneys had violated Tenn. R. Civ. P. 11.02(1) and National's attorneys also had violated Rule 11.02(2).[2] The Rule 11 Order recounted the argument National made at the show-cause hearing regarding the issue of just compensation as follows:

---

[2] We refer to the attorney who represented National in the condemnation proceeding, Larry W. Johnson, and his law firm, Morris, Schneider & Prior, L.L.C., as National's attorneys.

At the filing of its Answer and Claim, Defendant National was not sure that the proper compensation had been paid with respect to the property taken.

Defendant National City had a mere five days to respond to the Petition to contest the right of the Petitioners to condemn the property.

The undersigned had insufficient time to obtain an appraisal of the property and wanted to preserve Defendant National City's rights to dispute value at a later date. . . .

In holding that National and its attorneys violated Rule 11.02(1), the Trial Court made the following findings: (1) the Petition and Notice were served on National on February 17, 2000; (2) the Notice stated the March 27, 2000, hearing would not cover the issues of the value of the Property or just compensation for the taking of the Property; (3) National did not file a written objection to the taking within 5 days of service of the Notice as required by statute; (4) National filed an Answer on March 7, 2000, in which it contended that the condemnation constituted a taking without just compensation in violation of the United States and Tennessee Constitutions; (5) National also filed, on March 7, 2000, a Motion for Payment of Proceeds in which it stated that "'no party-in-interest disputes that this sum [$12,500] represents just and adequate compensation for the [P]roperty . . .'"; (6) National sent correspondence to the Haywoods on February 22, 2000, in which it advised the Haywoods that the legal expenses incurred by National in this matter would be added to the balance of the Haywoods' mortgage; and (7) Roger Haywood testified he did not dispute the condemnation proceeding.

The Rule 11 Order also contained the following determinations of the Trial Court:

It is the opinion of the Court that the Defendant National . . . and its attorney received adequate and sufficient notice and the Petition for Condemnation and the taking of the property is for a public use and purpose. The Petition for Condemnation is valid and the Court has jurisdiction of this condemnation proceedings [sic].

The Court is of the further opinion that the representations, conduct and the type of action taken by the National . . . and its attorney . . . created delay and caused a needless increase in the cost of litigation and violated *Rule 11.02(1) T.R.C.P.* It is also the opinion of the Court that the claims, defenses and legal contentions made and taken by [National's] attorney . . . were misleading, frivolous and not warranted. . . .

-5-

In addition, the Statement of the Evidence provides the basis for the Trial Court's rationale for finding a Rule 11 violation by National and its attorneys, stating in pertinent part, as follows:

> [The] legal position taken and stated above at the sanction hearing was contrary and entirely different than the previous position taken by National and its attorney when they represented to the Court in support of their claim for the condemnation proceeds that the deposited funds were "just and adequate" compensation for the property and easement taken by the Petitioners. . . .

With respect to the sanctions imposed upon National and its attorneys for violating Rule 11.02(1), the Rule 11 Order held that National and its attorneys should pay a penalty of $5,000 and the Petitioners' attorneys' fees at a rate of $150 per hour which totaled approximately $5,360 for the Petitioners' two attorneys.[3] Furthermore, the Trial Court, in the Rule 11 Order, ordered National's attorneys to pay treble the amount of the Petitioners' attorneys' fees as a sanction for violating Rule 11.02(2).

National and its attorneys appeal.

## Discussion

On appeal and although not exactly stated as such, National and its attorneys raise the following issues for our consideration: (1) whether the Trial Court erred in holding that National and its attorneys violated Tenn. R. Civ. P. 11.02(1) and 11.02(2); (2) if National and its attorneys violated Rule 11.02(1), whether the Trial Court abused its discretion in imposing a penalty of $5,000 against them and awarding Petitioners' attorneys' fees; and (3) if National's attorneys violated Rule 11.02(2), whether the Trial Court abused its discretion in imposing a penalty of treble attorneys' fees upon them.

This Court reviews all aspects of a Trial Court's Rule 11 determination under an abuse of discretion standard. *McGaugh v. Galbreath*, 996 S.W.2d 186, 194 (Tenn. Ct. App. 1998); *Project Creation, Inc. v. Neal*, M1999-01272-COA-R3-CV, 2001 Tenn. App. LEXIS 624, at * 37 (Tenn. Ct. App. Aug. 21, 2001), *no appl. perm. app. filed*. This standard of review is applied because of the fact-intensive inquiry the Trial Court must make in Rule 11 determinations. *Id.* We should not reverse for "'abuse of discretion a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining.'" *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

---

[3] For simplicity's sake, we use round numbers in this opinion as much as possible.

First, we address National's issues on appeal regarding whether the Trial Court erred in finding that National and its attorneys violated Tenn. R. Civ. P. 11.02(1) & (2). As discussed, the Trial Court found National and its attorneys violated Rule 11.02(1) and held that the attorneys also violated Rule 11.02(2). Therefore, applying the appropriate standard of review, we must examine all of the conduct at issue to determine whether the Trial Court erred in holding the conduct sanctionable under Rule 11.02(1) & (2).

Tenn. R. Civ. P. 11.01 provides that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record . . . or, if the party is not represented by an attorney, shall be signed by the party." The requirement of a signature "'is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. . . .'" *McGaugh v. Galbreath*, 996 S.W.2d at 194 (quoting *Andrews v. Bible*, 812 S.W.2d 284, 287 (Tenn. 1991)). "'A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive.'" *Id.*

Tenn. R. Civ. P. 11.02(1) & (2) provide, in pertinent part, as follows:

> By presenting to the court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . .

When determining whether an attorney's or party's conduct violates Rule 11.02, the test to be applied is "'one of objective reasonableness under all the circumstances . . . and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed.'" *McGaugh v. Galbreath*, 996 S.W.2d at 194 (quoting *Andrews v. Bible*, 812 S.W.2d at 288).[4]

---

[4] Courts also use the following analysis to determine whether an attorney's conduct is sanctionable conduct under Rule 11:

"1.    An attorney must READ every paper before signing it.

(continued...)

Because this matter involves a taking of private property by governmental entities through eminent domain, we must examine Tennessee's eminent domain statutes and cases to determine whether the Trial Court erred in finding that National's and its attorneys' conduct was not objectively reasonable in light of the then-existing circumstances. *See id.* The Tennessee Constitution provides the state government an inherent right of eminent domain, the power to take a person's property for public purposes, stating:

> That no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor.

Tenn. Const. art. I, § 21. *See also* Tenn. Code Ann. § 7-34-104(a)(1), § 29-16-101, *et seq.*, § 29-17-801, *et seq.* (providing the power of eminent domain to counties and municipalities). The

---

[4](...continued)

2.  He must make a reasonable pre-filing investigation of the FACTS.

3.  He must research the LAW, unless he is certain he knows it.

4.  The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5.  It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each Defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

6.  The adequacy of an attorney's investigation, research and legal analysis will be evaluated by the court under an OBJECTIVE STANDARD, namely, whether the attorney acted as a reasonably competent attorney admitted to . . . practice. Except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions. A pure heart but an empty head is no avail.

* * * * * *

8.  An attorney must not have an IMPROPER PURPOSE, such as harassment or intimidation, in naming any defendant, asserting any legal position or taking any legal step.

9.  If an attorney violates Rule 11, the imposition of some sanction is MANDATORY, although the nature and extent of the sanction is discretionary with the [trial] court."

*White v. Myers*, E1999-02642-COA-R3-CV, 2001 Tenn. App. LEXIS 814, at * 20-21 (Tenn. Ct. App. Oct. 31, 2001), *no appl. perm. app. filed*, (quoting *Andrews v. Bible*, 812 S.W.2d at 288) (alterations in original).

-8-

government's eminent domain power is a limitation on a person's ownership of his property. *City of Chattanooga v. Classic Refinery, Inc.*, No. 03A01-9712-CV-00552, 1998 Tenn. App. LEXIS 854, at * 9 (Tenn. Ct. App. Dec. 17, 1998), *no appl. perm. app. filed*, (citing *Harper v. Trenton Hous. Auth.*, 274 S.W.2d 635, 641 (Tenn. Ct. App. 1954)). "'[B]ecause the power of eminent domain is against common right,'. . . statutes granting such power are to be strictly construed against the condemnor, . . . and the procedures prescribed by those statutes 'must be followed. . . .'" *Roane County v. Christmas Lumber Co., Inc.*, No. E1999-00370-COA-R9-CV, 2000 Tenn. App. LEXIS 493, at * 7 (Tenn. Ct. App. July 27, 2000), *no appl. perm. app. filed*, (citations omitted) (quoting *Vinson v. Nashville, Chattanooga & St. Louis Ry.*, 321 S.W.2d 841, 844 (Tenn. Ct. App. 1958); (*City of Chattanooga v. State*, 272 S.W. 432, 434 (Tenn. 1925)).

The government's eminent domain power is considerable. Even in the face of this considerable power, a property owner faced with the government's taking of her property for a public purpose still has a right to question the government's actions. A court should be cautious before taking action, particularly *sua sponte*, that restricts a property owner's right to question the actions of her government in taking her property. The right of an individual to question the eminent domain actions of the government, without fear of retaliation by the government, is fundamental under our Constitution. *See* Tenn. Const. art. I, §21. This fundamental right serves as the foundation for our analysis of the Trial Court's Rule 11 sanctions.

The record on appeal shows the Trial Court apparently based its determination that National and its attorneys violated Rule 11.02(1) and that National's attorney's also violated Rule 11.02(2) by the following conduct: (1) raising the defenses of subject matter and *in personam* jurisdiction; (2) objecting to the Petitioners' right to take the Property under eminent domain; (3) the positions National took in the Answer, in the Motion for Payment of Proceeds and at the show-cause hearing regarding the issue of just compensation; and (4) the correspondence National sent to the Haywoods regarding its decision to add National's attorney's fees to the balance of the Haywoods' mortgage. We will address each of these matters to determine whether the Trial Court erred in finding, *sua sponte*, that this conduct constituted sanctionable conduct under Rule 11.02(1) & (2).

In the Answer, National and its attorneys raised the defenses of lack of subject matter jurisdiction and lack of *in personam* jurisdiction. Although not specifically stated as such in the Answer, the record shows National and its attorneys based these defenses upon claimed insufficient service of process since the Notice and Petition were not sent to National's registered agent for service of process in Tennessee. Under Tenn. R. Civ. P. 12.02(1) & (2), defenses to lack of jurisdiction *shall* be asserted in a responsive pleading or in a written motion. Moreover, the Notice provided, consistent with Tenn. Code Ann. § 29-17-803(c), that National had only 5 days from the date the Notice was given to file a written objection to the taking. The Notice also stated that if no written objection was given within the 5-day period, Petitioners would have the right to take possession of the Property. *See* Tenn. Code Ann. § 29-17-803(c). The record shows the Notice was addressed to National's Miamisburg, Ohio, address instead of National's registered agent for service of process in Tennessee. The record also shows National did not file an objection within the 5-day period to the Petition. In light of the constraints placed on National by the 5-day rule set forth by

Tenn. Code Ann. § 29-17-803(c) and the requirement of Tenn. R. Civ. P. 12.02(1) & (2) that jurisdiction defenses be raised in a responsive pleading or motion, we hold that National and its attorneys acted with objective reasonableness, even if in error, in raising these jurisdiction defenses in the Answer. *See McGaugh v. Galbreath*, 996 S.W.2d at 194. Accordingly, we hold it was error for the Trial Court to find National and its attorneys violated Rule 11.02(1) and that the attorneys violated Rule 11.02(2) by raising these defenses, and we reverse this holding of the Trial Court.

Next, we address whether National and its attorneys violated Rule 11.02(1) & (2) when, in the Answer, they objected to Petitioners' right to take the Property under eminent domain and contended the Petition should be dismissed. As discussed, one of the eminent domain statutes under which the Petitioners proceeded, Tenn. Code Ann. § 29-17-803, provides that notice of the filing of a petition for condemnation shall be given to the property owner "at least five (5) days prior to the taking of any additional steps in the case." Tenn. Code Ann. § 29-17-803(a) & (b). The statute also contemplates an objection by the property owner to the condemnor's right to take the property, stating that "[a]fter the expiration of [5] days from the date of the giving of such notice *if the right to take is not questioned*, the condemnor shall have the right to take possession of the property or property rights. . . ." Tenn. Code Ann. § 29-17-803(c) (emphasis added); *see also Town of Collierville v. Norfolk S. Ry. Co.*, 1 S.W.3d 68, 73 n.5 (Tenn. Ct. App. 1998) (noting that Tenn. Code Ann. § 29-17-803(c) "implicitly, if not explicitly, [entitles] Norfolk Southern to question the Town's right to take"). In light of this statute, National had the right, at least, to raise an objection in its Answer to Petitioners' right to take the Property and acted with objective reasonableness in raising this objection. To impose Rule 11 sanctions under these circumstances, including the severe time constraints, against a property owner for objecting to the government's right to take property effectively would eliminate a property owner's right to object to the already-vast power of eminent domain. Consequently, we hold it was error for the Trial Court to hold that National's objecting to Petitioners' right to take the Property constituted a violation of Rule 11.02(1) & (2), and we reverse this determination.

We next determine whether National and its attorneys engaged in sanctionable conduct under Rule 11.02(1) & (2) regarding the issue of the proceeds the Petitioners deposited with the Trial Court Clerk for the taking of the Property. As grounds for finding Rule 11.02 violations by National and its attorneys, the Trial Court cited National's position regarding the issue of just compensation for the taking of the Property. The Statement of the Evidence, as discussed, characterized the argument National made at the show-cause hearing regarding this issue as being contrary to the position National previously took in its Motion for Payment of Proceeds.

Tenn. Code Ann. § 29-17-802 requires a governmental entity that is exercising its eminent domain powers under Tenn.Code Ann. § 29-17-801, *et seq.*, to deposit with the Trial Court Clerk the amount of compensation it determines the property owner is entitled to for the taking of the property. Thereafter, the property owner has three options regarding the deposit which are, generally stated: (1) accept the amount of the deposit as full settlement for the taking of the property; (2) not accept the deposit and appear for trial to determine the issue of just compensation; or (3) obtain the deposit, while disputing the amount deposited, and try the issue of just compensation.

Tenn. Code Ann. §§ 29-17-804, 29-17-805, & 29-17-806. The record shows National sought to proceed under the third option as it raised the defense, in its Answer, that the condemnation was an unconstitutional taking without just compensation while also filing a Motion for Payment of Proceeds in which it stated that no party disputed that the amount Petitioners had deposited was just compensation. While the language used in the Answer and Motion for Payment of Proceeds certainly could have been better worded to properly reflect National's choice to obtain the deposit while disputing the issue of just compensation, National had the right to choose this option. Therefore, while National's positions in the Answer and Motion for Payment of Proceeds and at the show-cause hearing may have been inartfully stated, they were not necessarily inconsistent and were objectively reasonable under the then-existing circumstances. Accordingly, we hold it was error for the Trial Court to find this conduct violated Rule 11.02(1) & (2), and we reverse the Trial Court's determination on this issue.

Finally, we must determine whether it was error for the Trial Court to hold that National and its attorneys violated Rule 11.02 because of the February 22, 2000, correspondence National sent to the Haywoods regarding National's attorney's fees incurred in this matter. As discussed, this letter is not a part of the record on appeal but, according to Roger Haywood's testimony, this correspondence stated that National had hired an attorney to protect its interest and that the attorney's fees would be added to the Haywoods' mortgage balance. The language contained in Rule 11 shows that the rule applies to pleadings, written motions and other papers which are presented to the court "whether by signing, filing, submitting, or later advocating. . . ." Tenn. R. Civ. P. 11.02. *See also State v. Miller*, E2000-03038-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 582, at * 6 (Tenn. Crim. App. Aug. 2, 2001), *no appl. perm. app. filed*, (holding that Rule 11 "clearly applies only to pleadings, motions, or other papers filed by a party or the party's attorney"). The record on appeal shows the February 22, 2000, correspondence was never filed, submitted or otherwise relied upon by National and its attorneys in court. Accordingly, due to the facts and circumstances presented by the record on appeal, we hold it was error for the Trial Court to hold that National and its attorneys violated Rule 11.02(1) & (2) by sending this correspondence to the Haywoods, and we reverse this determination.

We believe the Trial Court's decision to impose Rule 11 sanctions, *sua sponte,* under the facts and circumstances presented in the record before us, places an unnecessary chill on all property owners' right to question the eminent domain actions of the government. We believe such a result is neither desirable as policy nor appropriate under the law.

The remaining issues on appeal concern the Rule 11 sanctions the Trial Court imposed upon National and its attorneys. Since we hold that National and its attorneys did not engage in any sanctionable conduct under Rule 11.02(1) & (2), these issues are pretermitted.

**Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellees, the City of Brentwood and the State of Tennessee.

_____
D. MICHAEL SWINEY, JUDGE