HARDIN H. RAGLAND et ux.

*v.*

DAVIDSON COUNTY BOARD OF EDUCATION.

(*Nashville,* December Term, 1957.)

Opinion filed February 6, 1958.

Rehearing Denied April 9, 1958.

318

DICK L. LANSDEN and MACLIN P. DAVIS, JR., and WALLER, DAVIS & LANSDEN, of counsel, Nashville, for plaintiffs in error.

ELMER D. DAVIES, JR., and SHELTON LUTON, Nashville, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

In the spring of 1956, the Davidson County Board of Education adopted a resolution to condemn property belonging to the plaintiffs in error and authorized condemnation proceedings to be instituted in the County Court of Davidson County under authority of Sections 49-801 through 49-804, T.C.A.

These sections of the Code were originally Section 35 of Chapter 115 of the Public Acts of 1925, which is the General Education Bill. Of course it is the unquestioned rule everywhere, so far as we know, that land may be

taken by the right of eminent domain for the purpose of public schools and that such taking is for the public use. The mere fact that these sections of the Code, under which this proceeding was instituted, were embodied in the General Education Bill shows that this was giving the school authorities of the State another and more expeditious way (a quicker way) of acquiring property for public school purposes, as County Courts are open practically continuously and their terms are from month to month (Section 16-706, T.C.A.). The County Court for purposes here being considered is to all intents and purposes always open. Section 16-707, T.C.A.

The petition in this cause was filed in the County Court on August 3, 1956, making the necessary averments and allegations. On November 2, 1956, a Board of Appraisers was appointed pursuant to Section 49-802, T.C.A., to lay off the ground and fix the value, etc., according to said Code Section. On November 12, 1956, these appraisers made their report fixing the value, etc., in the total amount of $97,725. On November 15, 1956, the report of the appraisers was returned by the sheriff to the Court and an order was entered in the County Court ordering the report filed and made a part of the record. On the same day that this report was filed the Board of Education adopted a resolution authorizing the County Attorney to proceed with the acquisition of this property. There was no objection as to the amount fixed by the appraisers.

Subsequent to this by consent of the plaintiffs in error, the property owners, with the representatives of the Board of Education experts, went on the property and made percolation tests. This is the first time that the School Board had made such a test. After the conclusion

of these tests it was determined that the property was not suitable for the erection of a school and it was then, on December 14, 1956, that the School Board appeared before the County Court and made this fact known and asked leave and did and were granted leave by the County Judge to take a voluntary nonsuit in the cause.

Four days following this nonsuit the plaintiffs in error filed a motion asking the County Court to set aside the order of nonsuit. This motion was later amended after entering into a stipulation of fact that the Board of Education by proper legislation had approved the taking of this property at the figure set by the appraisers; the hearing of proof of the fact that after the percolation tests it was made known that the property was no longer suitable for school purposes. Then it was that the County Judge overruled and denied the motion to set aside the nonsuit.

An appeal was then seasonably taken by the plaintiffs in error to the Circuit Court where again proof was heard for the record only, as to the facts above indicated in reference to the percolation tests and that this was the reason for the abandonment of the condemnation proceedings. The Circuit Judge affirmed the order of the County Judge wherein he held that the Board of Education was entitled to take a voluntary nonsuit. The property owners have duly appealed, filed excellent briefs and made excellent arguments before this Court—we can say the same for the Board of Education. We now have the matter for disposition.

Under this state of the record the property owners take the position that:

"The order of nonsuit or dismissal entered at the December Term of the monthly County Court was entered at a time when it was too late for the County Board of Education to appeal from the award of the Appraisers and therefore entered after the award had become final."

In other words, the property owners take the position that by operation of law and the adjournment of the November Term of County Court (the award having been returned by the jury of view during that time) that the authority of the County Judge with respect to the case had ended and he could do nothing else about it.

■ Originally the authority of the judge expired with the adjournment of the trial term. *Jones v. Burch,* 71 Tenn. 747; *Kennedy v. Kennedy,* 81 Tenn. 24. This very harsh rule though has been extended one way or the other from time to time and finally by Chapter 48 of the Public Acts of 1947 the now Section 16-519, T.C.A., was brought into being. This Section was in force and effect at the time of trial of this cause. The effect of the Section as it now is,

"conferred upon the trial judge full authority to enter the final decree at the January Term 1948, and it was not necessary to its validity that the former term be extended into the succeeding term by any order of court. The cases cited by council became a dead letter upon the passage of this statute." *Crane Enamel Co. v. Jamison,* 188 Tenn. 211, 223, 217 S.W. 2d 945, 950.

Preceding this statement this Court, speaking through the present Chief Justice, refers to several cases including one relied on here by the plaintiff in error of *Mitchell v. Porter,* 26 Tenn. App. 498, 173 S.W. 2d 443, 452, and

others. This rule or statement is the law in Tennessee and is equally applicable to cases being tried in the County Court of the kind here under consideration as it is to the same kind of cases being tried in the Circuit Court. Just a few words of Section 16-519, T.C.A., so that we may see the applicability of what has just been said. That Section in part reads:

"When any case, on or after trial by court or jury, is undetermined at the time the term at which it is pending expires, on account of time, and on account of the arrival of the succeeding term, without the necessity of an order of extension, the term shall be extended and continued, * * *" etc.

Thus it seems plain that if the case had not become final, in other words if there was anything still to be done in this case, the court in which the case was filed still had an opportunity to do these things at the succeeding term and he was not cut off by reason of the November Term having ended and the December Term of the County Court having started.

Section 49-804, T.C.A., one of the Sections governing the filing of the instant proceeding, provides for an appeal to the Circuit Court and that the matter may be there heard *de novo*. This same section of course provides that if the parties do not agree, that the county still may take possession of the property upon giving bond and then they may proceed with the construction of their school house and meantime the case is appealed to the Circuit Court where it will be tried as other condemnation suits. This Section also provides that if the parties do get together that then the land owner will give a deed and if this is done a judgment may be rendered against

324

the county and the funds shall be paid out of the general funds, etc., of the county. Here in the instant case the appraisers had fixed the value, properly described the land, the School Board had agreed to take it on this valuation but obviously it had not reached a finality in this because then for the first time, consent was had and percolation tests were made which showed the property unsuitable for school purposes. In other words at the end of November no final judgment had been rendered, the matter was not finally determined and then when it was found that the land was not suitable for purposes for which it was being condemned a nonsuit was taken.

Code Section 16-719, T.C.A., provides that the mode of procedure in the County Court when the jurisdiction is concurrent with the Circuit Court, etc., shall be as near as it may be according to the rules and conduct of similar business in those courts. Concurrent jurisdiction is that which may be exercised at the same time over the same subject matter in the same county "wherein litigants may in the first instance resort to either court indifferently." 21 C.J.S. Courts sec. 18, p. 34. It is conceded that the School Board might have commenced this action in either Court. The mere fact there is an appeal from County Court to Circuit Court does not prevent the jurisdiction being concurrent. After the appeal the case is tried *de novo*. Section 16-717, T.C.A., provides that in these Courts having concurrent jurisdiction the County Court is vested with all the incidental powers belonging to or conferred on those Courts having concurrent jurisdiction. Thus as we see it the procedure applicable in the Circuit Court is likewise applicable in the County Court and thus the applicability of Section 16-519, T.C.A., quoted from and referred to *supra,* herein.

Bearing this statement last above made in mind we must remember that Sections 20-1310 and 20-1313, T.C.A., make certain provisions as to when a voluntary nonsuit may be taken in the Circuit Court. We think these Sections likewise applicable to the County Court.

Under this provision of the Code as to taking a nonsuit this Court in *Cunningham v. Memphis Railway Terminal Co.,* 126 Tenn. 343, 149 S.W. 103, Ann.Cas. 1913E, 1058, has made various statements laying down a very clear rule when a nonsuit might be taken in an eminent domain or condemnation case. This Court there held that after the report of the jury of view, but before its confirmation and before bond had been given in double the amount of damages found by the jury of view, the petitioner (in that instance a railroad company) may take a nonsuit, even though it had incidentally invaded the possession of the defendant, if it has not taken possession under any order of Court, where it is made to appear that the enterprise had become impractical and it has been abandoned. We have almost an identical situation here. The property owner has not been damaged, there has been no final order appropriating his property and the Board of Education has determined that the property was unsuitable and impractical after making a percolation test.

The Court of Appeals (*certiorari* denied by this Court), in *Huff v. Department of Highways,* 3 Tenn.App. 277, has reached the same conclusion. There, that Court after the appraisal had been made and returned by the appraisers, and even after the Department of Highways had taken some of the gravel from the gravel pit, held that the Department of Highways of the county might

take a voluntary nonsuit and would be only liable to the property owner for the damages done or what gravel was taken. These cases, it is true, were conducted under our general Eminent Domain Statutes, secs. 23-1401, 23-1424, T.C.A., both inclusive.

Code Section 23-1402, T.C.A., provides that this Chapter, that is the Chapter on Eminent Domain just referred to, shall be considered without it being incorporated in it with every Section or legislative Act present or past in regard to the powers of condemnation. This Court in passing on this Section has said that it simply amends the Eminent Domain law so as to provide whether the law is a private act applying to a particular county or whether it was done as the condemnation was here brought by the School Board under a particular school board eminent domain act, that this general eminent domain law shall be read into, and the provisions of it are applicable to that act as well. *Tennessee Min. & Mfg. Co. v. Anderson County,* 173 Tenn. 497, 121 S.W. 2d 543.

Thus it is then when we look to Sections 23-1416, 23-1418, and to Section 49-804, T.C.A., we see that there is nothing in 49-804, that says that the only relief that the parties have after the Board of Appraisers' report is filed is to appeal. Under those Sections just mentioned the parties have the right after the Board of Appraisers have made their report to ask that it be set aside or that they ask that it should be confirmed or should appeal from it. In other words this report when filed as it was here was not final. We think that what we have just said is an additional reason of why it had not become final.

It seems clear to us that there is no possible indication in this legislation here which is enacted as part

of the General Education Bill that there was any stricter provision put on the Board of Education in these condemnation cases than there was anyone else. It was the intention to ease up on condemnation proceedings rather than to make them stronger. The purpose as we said above for the enactment of this special provision for these Boards of Education was solely for the purpose of expediting the process of taking property for these purposes. Usually, where there is no appeal, the condemnation proceeding may be disposed of more quickly in the County Court than in the Circuit Court especially in view of the fact that the County Court is always in session, whereas the Circuit Court may not be.

The general rule as stated in 121 A.L.R. at page 23 is that:

"The right to discontinue condemnation proceedings before there has been any assessment of damages or a verdict determining the same is generally recognized and upheld."

Under this, cases from practically every State in the Union including that of *Cunningham v. Memphis Railway Terminal Co., supra,* are cited. In reading this note and a number of the cases there cited, and others, we find this running through some of the cases that as long as the payment of damages or the securing of compensation (there has been no taking or transfer of title, in other words that there has been no bond filed for the payment of damages) no property had been taken then that a nonsuit may be taken. The English rule is different and it favors the property owner. And under cases cited in this note it is shown that the mere filing of condemnation proceedings by a municipality the giving of

statutory notice of an intention to condemn then that they cannot nonsuit. We of course do not adhere to this strict rule. When we think of the fact that the land that is being taken for these school purposes does not vest in fee in the county or the school district or what not, but it is only the right to use and the occupation of the land for school purposes that it is taken this seems reasonable.

The only reason for taking this nonsuit was the discovery that this land was unsuitable, this could not have been ascertained sooner because the plaintiffs in error would not permit the tests to be made until after the appraisal report was filed. The petitioners had not taken the property and, therefore, did not wish to make the test without the defendant's permission. The record clearly shows that this was an abandonment of the project and not an abandonment of the suit with any such idea of getting the damages down or what not. It was just abandoned because the schools could not use the property.

This Court many years ago in the case of *Stevens v. Duck River Navigation Co.*, 33 Tenn. 237, had before it a similar question. This is a case of where Duck River was dammed up down near Columbia by the Duck River Corporation with the intention of taking various properties there for its purpose, as it had a right to do under its charter, and after the proceedings had been started they found that it was necessary for them to abandon the project. As to whether or not they could take a nonsuit and abandon the project and merely pay for what damage was done this Court permitted that and said this:

"On the contrary, we think that an utter abandonment of the contemplated scheme of improvement, in good faith, at any time before the final judgment of

the court upon the report of the jury, would take away the right of the party injured to insist upon the value of his property, and transfer of the title to the company, and leave him to recover such damages, under all the circumstances of the case, as he may have sustained, by the erection of a dam, during its continuance.'' At page 245 of 33 Tenn.

We have carefully considered each and every authority cited, have done a great deal of independent investigation because of our interest in the question and after this have concluded as above indicated, that is, that there was no error in the order of the trial court. It is thus affirmed with costs.

## On Petition for Rehearing

There has been seasonably filed herein a courteous and dignified petition to rehear. This petition consists of some eleven pages and is filed for the purpose of calling our ''attention to material and substantial errors of law and fact apparent on the face of the opinion''.

The argument made by counsel primarily is that the jurisdiction given the County Court in condemnation under Sections 49-801 through 49-804, T.C.A., are not concurrent with condemnation statutes applicable to the Circuit Court because under these special County Court condemnation statutes there is no provision for a jury trial, etc. The argument is that if our opinion is correct that then the mayor of the town, who is likewise given jurisdiction under these Acts would have concurrent jurisdiction with the Circuit Court. Counsel, too, argues that if our conclusion, in our original opinion, is correct that the Circuit Court would have concurrent jurisdiction

in matters of probating wills, etc. A related argument (citing authorities) was made to this Court one hundred years ago and answered by the Court adversely to the petition herein. See *Towson v. Debow,* 37 Tenn. 193, 195. We think this argument is erroneous and wholly overlooks the principal involved. We were probably responsible for this in not making it a little more definite in our original opinion.

The jurisdiction of course of the two courts is only concurrent insofar as the County Court has jurisdiction wherein this jurisdiction corresponds with a similar jurisdiction when the action is originally brought in the Circuit Court. Under these Sections, 49-801 et seq., the County Court's jurisdiction ends at a point when the property owner and the condemner, the School Board, are not able to get together after a jury of view has reported. These condemnation sections then end and when they are not able to get together as provided in these sections why then it is appealed to the Circuit Court and there tried *de novo* by the jury. This does not keep the actions as originally brought from being concurrent. When the actions or proceedings with respect to a subject matter can be brought in one of several courts they are concurrent as far as the jurisdiction of the proceeding goes.

These sections of the Code of course, as said in the original opinion, are part of the Education Act and are not very skillfully drawn but drawn merely for the purpose of expediting the condemnation of this land for these school purposes.

Next it is very courteously and seriously complained that we found certain facts, that is, that the reason the

School Board declined to take this property was because of the percolation tests. This fact statement is not necessary to the decision at all but is a statement of fact that was more or less conceded in argument both orally and in brief. This state of facts is merely pointed out to show that there was no attempt to play fast and loose with the courts in taking this nonsuit. In other words there was not any position of filing a condemnation and then because the money was too much then backing out and taking a nonsuit, or anything of that kind. It was conceded that the parties were not in any disagreement about the amount but if they could not use the property clearly they did not want to take it.

The theory of fact of the way these sections in regard to condemnation, that is 49-801 through 49-804, T.C.A., are drawn is to show that unless after the jury of view is appointed and the figure was fixed, unless there was a meeting of minds of the parties, that they agreed, then that the action was not ended. This within itself would preclude the action of the County Court from becoming final so as to bar the party from taking a nonsuit.

We have very carefully read and considered this petition and after doing so we appreciate counsel's calling our attention to these things, but we are more convinced than ever of the correctness of the result of our original opinion, that is, that under the facts and circumstances here the County Board of Education was not barred from taking a nonsuit. We have said nothing in this case that is in conflict with the holding in Justices of *Williamson County v. Jefferson,* 41 Tenn. 419, 420.

The result is that the petition to rehear must be overruled.