IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

## DAVID MILLS v. LINDA SOLOMON

**Appeal from the Chancery Court for Cannon County**
**No. 95-54     Robert E. Corlew, III, Chancellor**

**No. M1998-00393-COA-R3-CV - Filed August 16, 2000**

These proceedings began when David Mills filed a complaint seeking to condemn an easement across Linda Solomon's property. In bifurcated proceedings, the jury first determined the location of Mills' easement across Solomon's property and, later, found that Solomon was entitled to an award of damages totaling $11,908 for the easement, including $9900 in incidental damages. On appeal from the trial court's judgment entered on the jury's verdict, Mills challenges only the award of $9900 in incidental damages. We agree with Mills' contention that the record fails to contain material evidence to support the award of incidental damages, and we reverse that portion of the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Frank M. Fly, Murfreesboro, Tennessee, for the appellant, David Mills.

John B. Melton, Jr., Woodbury, Tennessee, and Frank Buck and Lena Ann Buck, Smithville, Tennessee, for the appellee, Linda Solomon.

### OPINION

Mills initiated these proceedings in June 1995 when he filed a complaint to condemn an easement or right-of-way over Solomon's property pursuant to Tennessee Code Annotated section 54-14-102 (1993). Tracking the language of the foregoing statute, Mills' complaint alleged that he owned a twenty-acre tract of land adjacent to a 118-acre tract owned by Solomon in Cannon County, that Mills' property was cut off or obstructed entirely from a public road or highway by the intervening lands of Solomon and others, and that Mills had no adequate and convenient outlet from his land to a public road. According to Mills' complaint, the parties were friends when they moved to Cannon County in the early 1970's. In 1980, Mills bought a twenty-acre tract adjacent to

Solomon's land. With Solomon's permission, Mills constructed a dirt road over Solomon's property, and he used the road to access his property until the early 1990's, when Solomon withdrew her permission for Mills to use the road and threatened to have Mills arrested for trespassing.

The first phase of the trial proceedings was conducted in June 1997. At the conclusion of this phase, the jury returned a verdict establishing the location of Mills' easement on Solomon's property. At the second hearing, held in September 1997, the jury decided the issue of damages. The jury found that Solomon was entitled to damages in the total sum of $11,908. This amount included $1908 for the easement itself and $100 for the rental value of the easement pending the trial proceedings. The remainder of the award, $9900, consisted of the "incidental damages to the balance of the land owned by Ms. Solomon."

After the trial court entered a final judgment in accordance with the jury's verdict, Mills filed a motion for remittitur and/or new trial. The trial court denied Mills' post-trial motion, and this appeal followed.

Pending this appeal, the trial court ruled that Mills was not entitled to possession of the easement until he had paid the award of damages to Solomon. Nevertheless, the trial court granted Mills the temporary use of the easement conditioned upon his posting a bond in the sum of $1000. Solomon objected to the amount of the bond, contending that, pursuant to this state's eminent domain statutes, Mills was required to post a bond for double the amount of damages awarded. *See* Tenn. Code Ann. § 29-16-120 (1980).

On appeal, Mills challenges only the award of incidental damages, contending that the evidence presented at trial failed to support the award of $9900 for incidental damages to Solomon's land.[1] In response, Solomon contends that the award of incidental damages should be upheld because it is within the range of evidence presented at trial. As a preliminary matter, however, Solomon again challenges the adequacy of Mills' bond, insisting that Mills' appeal should be dismissed due to his failure to post a bond for double the amount of damages as required by this state's eminent domain statutes.

We first address Solomon's contention that Mills' appeal should be dismissed due to his failure to post a sufficient bond. In support of this argument, Solomon relies upon the following statutory provision:

> The taking of an appeal does not suspend the operations of the petitioner on the land, provided such petitioner will give bond with good security, to be approved by the clerk, in double the amount of the assessment of the jury of inquest, payable to the defendants, and conditioned to abide by and perform the final judgment in the premises.

---

[1] Mills filed a bankruptcy petition pending these proceedings, but the bankruptcy court granted relief from the automatic stay provisions of the bankruptcy code to allow Mills to pursue this appeal.

Tenn. Code Ann. § 29-16-120 (1980). Solomon contends that this statutory bond requirement applies to all condemnation proceedings, including condemnations of private easements pursuant to title 54, chapter 14.

We disagree. The statutory bond provision cited by Solomon is found in this state's eminent domain statutes codified at title 29, chapter 16. Title 29, chapter 16 grants certain entities the power to condemn another's real property for the purpose of constructing internal improvements. Specifically, chapter 16 provides that

> [a]ny person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided.

Tenn. Code Ann. § 29-16-101 (1980). Moreover, chapter 16 states that its provisions

> shall be deemed, unless expressly stated to the contrary, and without incorporation or reference, to be a part of every section, or legislative act, present or future, which grants the power of such condemnation.

Tenn. Code Ann. § 29-16-102 (1980). Thus, chapter 16's provisions apply to every legislative enactment granting such condemnation powers, whether the enactment consists of a public statute or a private act. *See Ragland v. Davidson County Bd. of Educ.*, 312 S.W.2d 855, 859 (Tenn. 1958); *Tennessee Mining & Mfg. Co. v. Anderson County*, 121 S.W.2d 543, 546 (Tenn. 1938).

Contrary to Solomon's argument, we conclude that the cited statutory bond provision does not apply to the present proceeding. The present proceeding was brought pursuant to title 54, chapter 14, which permits a landlocked property owner to condemn an easement or right-of-way across the property of an adjacent landowner. Specifically, title 54, chapter 14 provides that

> [a]ny person owning any lands, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from such lands to a public road in the state, by reason of the intervening lands of another, is given the right to have an easement or right-of-way condemned and set aside for the benefit of such lands over and across such intervening lands or property.

Tenn. Code Ann. § 54-14-102 (1993).

This court has recognized that a proceeding brought pursuant to section 54-14-102 is, in effect, a condemnation action because the statute "confers the power of eminent domain upon one private person to take another's property," provided the petitioner meets the statutory requirement

of necessity and provided he uses the easement or right-of-way only for the purpose of ingress and egress. ***Vinson v. Nashville, Chattanooga & St. Louis Ry.***, 321 S.W.2d 841, 843 (Tenn. Ct. App. 1958). We also have recognized, however, that an action to condemn a private easement or right-of-way under this statute differs significantly from an action to condemn an easement or right-of-way for a public road under this state's other condemnation statutes. The easement or right-of-way condemned under section 54-14-102 "is a private and not a public way." ***Id***. It belongs to the owner of the land benefitted thereby, and it continues as long as it is used and maintained by the owner for the limited purpose of ingress and egress. In contrast, a public road is held in trust for the public and is maintained for use by the public at large. ***See id***. at 843-44.

Although the present proceeding may be characterized as a condemnation action, we do not believe that it is the type of condemnation action to which the provisions of title 29, chapter 16 apply. Title 29, chapter 16 applies to condemnation actions brought by persons or corporations for the purpose of constructing internal improvements, such as railroads, turnpikes, canals, toll bridges, roads, causeways, or other improvements. ***See*** Tenn. Code Ann. § 29-16-101 (1980). By its provisions, this chapter also applies to any legislative act "which grants the power of such condemnation." Tenn. Code Ann. § 29-16-102 (1980). By referring to "the power of ***such*** condemnation," rather than simply "the power of condemnation," the statute limits its application to the type of condemnation action set forth in the preceding section 29-16-101, ***i.e.*** the condemnation of land for the purpose of constructing internal improvements.

The present proceeding does not involve the condemnation of land for the construction of an internal improvement. Rather, as we previously explained, this action involves the condemnation of land for the limited purpose of ingress from or egress to a public road. Accordingly, the remaining provisions of title 29, chapter 16, including the cited statutory bond provision, do not apply to the present proceeding.

Our conclusion that Mills was not required to comply with the foregoing statutory bond provision is strengthened by the legislature's recent amendment of title 54, chapter 14, to include a similar bond requirement. Rather than requiring a petitioner taking an appeal to post a bond for double the amount of damages, the amendment requires the petitioner to post a bond for double the appraised value of the parcel of land or property rights sought to be taken:

> Upon the filing of a petition by the person desiring to secure such easement or right-of-way, the court shall appoint an appraiser to conduct an appraisal of the parcel of land or rights therein or incident thereto a portion of which is wanted. The cost of the appraisal shall be borne by the person seeking to appropriate such land. Upon completion, the appraisal shall be filed with the court and within thirty (30) days of the filing, the person seeking to appropriate such land shall post a bond for two (2) times the amount of the appraisal. The appraisal shall be conducted for the sole purpose of determining the amount of the bond and shall not be admissible as evidence.

Tenn. Code Ann. § 54-14-103(b) (Supp. 1999). This provision, which went into effect June 14, 1999, *see* 1999 Tenn. Pub. Acts 362, provides some of the same protection as the appeal bond required by section 29-16-120, but it provides this protection earlier in the proceeding by requiring the petitioner to post a bond shortly after the filing of the petition rather than upon taking an appeal. Although not conclusive of the legislature's intent, we think that this recent amendment supports the notion that, prior to June 14, 1999, the statutes authorizing the condemnation of private easements did not include such a statutory bond requirement.

As for the damages issue raised by Mills, we agree that the jury's award of incidental damages in this case is not supported by material evidence. Our review of the judgment entered on the jury's verdict is governed by rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). Under this standard of review, we "are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict." **Crabtree Masonry Co. v. C&R Constr., Inc.**, 575 S.W.2d 4, 5 (Tenn. 1978). In making this determination, we are "required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary." **Id**. If the record contains any material evidence to support the verdict, we must affirm the trial court's judgment. **See id**.; **accord Forrester v. Stockstill**, 869 S.W.2d 328, 329 (Tenn. 1994).

As located by the jury, Mills' easement traversed Solomon's property in such a way that eleven acres of Solomon's property lay on one side of the easement and the remainder of her property lay on the other side. At the damages phase of the proceedings, Solomon's proof of damages focused on the eleven acres of land that lay on the left side of Mills' easement. Solomon testified that the fair market value of her property was $1000 per acre. In Solomon's opinion, the fair market value of her property had declined by $10,000 or $11,000, the fair market value of the eleven acres to the left of Mills' easement. Solomon defended her opinion by explaining that the easement "cut up" her property, that "it [was] like losing that much of [her] property," and that, if her children inherited the land, they would be "getting less property." Thus, in estimating her damages, Solomon discounted the value of her property by the entire fair market value of the eleven acres.

Solomon's expert similarly estimated the damages to Solomon's property by deducting the entire value of the eleven acres. Gary Nichols, a licensed real estate broker, testified that Solomon's property was worth $833 per acre. In Nichols' opinion, the value of Solomon's property was reduced by $9163, the full value of the eleven acres on one side of the easement. Nichols acknowledged that his damages estimate "was the same as if Mrs. Solomon were deeding [the eleven acres] over to Mr. Mills." Nichols defended his estimate by explaining that Solomon would be unable to sell the eleven acres as a separate tract because of its severe topography and insufficient frontage on a public road. Nichols believed that Mills' condemnation of the easement was comparable to "cutting a portion of [the] land off and cutting it away." At another point in his

testimony, however, Nichols contradicted his statement that the eleven acres had no value when he testified that "[y]ou could sell it [the eleven acres], it would just be at a lessor [sic] value than what it, you know, would be otherwise."

In our view, this testimony misapprehends both the legal effect of Mills' easement across Solomon's property and the law of damages in cases involving the condemnation of such easements. Contrary to Solomon's and Nichol's suggestions, Mills' easement did not have the effect of severing Solomon's property into two tracts of land. By condemning an easement pursuant to section 54-14-102, Mills did not acquire title to the strip of property over which the easement lay. That property is still owned by Solomon. *See Lillard v. Southern Ry. Co.*, 330 S.W.2d 335, 337 (Tenn. 1959); *Colonial Pipeline Co. v. Eatherly*, 621 S.W.2d 770, 773 (Tenn. Ct. App. 1981). All that Mills acquired was the right to use the property for the limited purpose of ingress to and egress from his landlocked property. *See Vinson v. Nashville, Chattanooga & St. Louis Ry.*, 321 S.W.2d 841, 843 (Tenn. Ct. App. 1958). While Mills' condemnation of the easement might have diminished the value of Solomon's 118-acre tract of land, it did not result in the creation of two separate tracts of property.

As a general rule, when an easement is condemned across a defendant's property, the measure of damages is the difference in the fair market value of the defendant's property prior to the taking and its value after the taking. *See State ex rel. Shaw v. Gorman*, 596 S.W.2d 796, 797 (Tenn. 1980); *Betty v. Metropolitan Gov't*, 835 S.W.2d 1, 7 (Tenn. Ct. App. 1992). This is consistent with the rule that the "proper measure of damages to land remaining after a partial taking is the decline in the fair market value of the property by virtue of the taking." *Shelby County v. Kingsway Greens of Am., Inc.*, 706 S.W.2d 634, 638 (Tenn. Ct. App. 1985); *accord City of Rogersville v. Nelms*, 1985 WL 4126, at *2 (Tenn. Ct. App. Dec. 6, 1985) (*no perm. app. filed*). It is also consistent with the rule that, in an action for breach of covenant against encumbrances, where the encumbrance is an easement, the proper measure of damages is the property's diminution in value as a result of the easement's existence, *i.e.* the difference between the land's value without the easement and its value with the easement. *Ellison v. F. Murray Parker Builders, Inc.*, 573 S.W.2d 161, 162-63 (Tenn. Ct. App. 1978).

In cases involving the condemnation of an easement or any other partial taking, the defendant's damages should be measured in relation to the defendant's entire tract of property. *See Blevins v. Johnson County*, 746 S.W.2d 678, 685 (Tenn. 1988); *State ex rel. Pack v. Walker*, 423 S.W.2d 473, 473 (Tenn. 1968). That is, the measure of damages should be the difference in value of the entire property or tract before the creation of the easement and its value after the easement's creation. *See Faulkner v. City of Nashville*, 285 S.W. 39, 43 (Tenn. 1926); *see also* 29A C.J.S. *Eminent Domain* §§ 126, 131, at 325, 340 (1992).

In the present case, Solomon's proof of damages improperly focused on the value of the eleven acres of land on the left side of Mills' easement as if the eleven acres were severable from the entire tract of Solomon's property. Solomon's testimony that the eleven acres had no value was based upon her feeling that this portion of the property was "cut off" from the remainder of the tract.

Nichols' testimony that the eleven acres had no value was based on his opinion that, if offered for sale as a separate tract, the eleven-acre tract would not be marketable, but he later acknowledged that the eleven acres had some value. None of this testimony addressed the determinative issue of the easement's effect on the value of the entire 118-acre tract of property owned by Solomon. Instead, the testimony focused only on the easement's effect on the eleven acres to the left of the easement.

We recognize that Mills' easement may have affected the value of Solomon's property and, particularly, the value of the property in the immediate vicinity of the easement. The only proof of diminished value, however, was based, not upon the value of the entire tract, but upon the value of eleven acres of the tract. Moreover, this proof was based entirely upon the hypothetical sale of the eleven acres as if it constituted a separate tract of property. *See State v. Chumbley*, 181 S.W.2d 382, 383 (Tenn. Ct. App. 1944) (holding that value of land condemned must be fixed as of time of taking and may not be based upon speculative future developments); *accord State ex rel. Comm'r v. Cox*, 1987 WL 17021, at *2 (Tenn. Ct. App. Sept. 15, 1987) (*no perm. app. filed*). Under these circumstances, we conclude that the record fails to contain material proof to support the jury's award of $9900 in incidental damages.

Inasmuch as the record contains no material evidence as to the easement's effect on the value of Solomon's entire tract of property, we reverse the award of $9900 in incidental damages, and we remand this cause for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. Costs of this appeal are taxed to the appellee, Linda Solomon, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE