IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2005 Session

## BERNICE WALTON WOODLAND AND JOHN L. WOODLAND
v.
## GLORIA J. THORNTON

An Appeal from the Circuit Court for Fayette County
No. 4390    Jon K. Blackwood, Judge

---

No. W2004-02829-COA-R3-CV - Filed August 25, 2005

---

This is a personal injury case arising out of an automobile accident. The defendant rear-ended the plaintiff's vehicle, and the plaintiff filed this lawsuit against the defendant for the damages resulting from the accident. A jury trial was held. At the conclusion of the trial, the jury awarded the plaintiff compensatory damages, including an amount for future pain and suffering and permanent injury. The trial court entered a judgment on the verdict. The defendant filed a motion to alter or amend the judgment, arguing that some elements of the jury's verdict were not supported by the evidence at trial. The motion was denied. The defendant now appeals. We affirm in part, reverse in part, and remand for the trial court to amend the judgment to conform with the evidence at trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Don G. Owens, III, Memphis, Tennessee, for the appellant, Gloria J. Thornton.

Kim E. Linville, Covington, Tennessee, for the appellee, Bernice Walton Woodland.

**OPINION**

On October 12, 2001, the automobile driven by Defendant/Appellant Gloria J. Thornton ("Thornton") struck the rear of the automobile driven by Plaintiff/Appellee Bernice Walton Woodland ("Woodland"). At the time of the accident, Woodland was sixty-five years old. As a result of the collision, Woodland suffered property damage and personal injuries.

On May 2, 2002, Woodland filed this lawsuit against Thornton, alleging negligence and seeking damages resulting from the accident.[1] Thornton denied that she was negligent and alleged that Woodland was comparatively at fault.

On August 9, 2004, the matter was tried before a jury. Several witnesses testified, and several exhibits were admitted into evidence. Because liability is not raised as an issue on appeal, we recount only the evidence pertaining to damages. During the trial, the parties stipulated that Thornton's property damage was $1,750.

Regarding Woodland's claimed personal injuries, she submitted the video deposition of James Burnett, M.D. ("Dr. Burnett"). In the deposition, Dr. Burnett testified that Woodland had been his patient since 1987. The medical records showed that, on the day of the accident, Woodland visited Dr. Burnett's office with complaints of pain in her neck, right shoulder, and right arm. She was tested that day, and a radiology report indicated that Woodland had no acute injuries or fractures, but that she had degenerative changes, or arthritis, in her neck. Dr. Burnett examined Woodland three days after the accident, and she told him that she still had neck, back, and shoulder pain. He prescribed muscle relaxers and pain medication to alleviate Woodland's symptoms. Dr. Burnett described Woodland's condition as "a whiplash type [in]jury [that] has caused a[n] exacerbation of her inflammatory change in her neck. It is a chronic thing." Dr. Burnett referred Woodland to a neurosurgeon, John Lindermuth, M.D. ("Dr. Lindermuth"), to explore the possibility of having surgery to relieve her neck pain. However, Woodland never underwent surgery to treat her condition. By April 3, 2002, over six months after the accident, Woodland still complained of pain in her neck and back, and Dr. Burnett continued to prescribe pain medication to her.

Dr. Burnett testified that he believed that the accident aggravated the existing degenerative changes in Woodland's neck and back. When asked whether he had an opinion about whether the condition in Woodland's back and shoulder was permanent, Dr. Burnett responded:

> Well, you know, as the MRI and X-rays revealed, she had arthritis and spinal stenosis, which was present before the wreck, but she's going to continue to have pain in her neck and shoulder intermittently I would – I think for the rest of her life. The motor vehicle accident in October of 2001 made it worse for a while. ***Today the pain that she has, I can't say for sure is, you know, from the wreck, but it's going to be permanent.***

A December 9, 2002 report from Dr. Lindermuth indicated that he believed that Woodland would "make a satisfactory recovery from her injuries with no permanent impairment."

Woodland's daughter, Bernstein Walton Owen ("Owen"), testified that, for about three months after the accident, Woodland was unable to drive or carry out all of the household duties she performed before the accident. During that three-month period, Owen drove Woodland to the

---

[1]Thornton's husband also brought a claim for loss of consortium.

grocery store and to appointments with physicians. Woodland paid Owen gas money and provided her lunch for her assistance. Owen estimated that Woodland had paid her a total of "close[] to" $200.

Woodland testified on her own behalf. She described the circumstances of the automobile accident and the injuries that she sustained from it. She testified that her neck and back pain persisted from the time of the accident through approximately January 2002. By the time of trial, Woodland said she no longer suffered constant pain. However, she had neck pain when she lifted something heavy or turned her head a certain way, and she occasionally suffered lower back pain as well. Woodland also claimed that, after the accident, she had difficulty sleeping. Woodland admitted that she had been treated by Dr. Burnett for neck pain prior to the accident in 1998, but said that the pain from that episode had subsided, and that at the time of the accident she was without pain in her neck. She also testified that, at the time of the accident, she was receiving Social Security disability benefits and had been since 1994 due to a pinched nerve in her left arm.

At the conclusion of trial, the jury found in favor of Woodland, determining that Thornton was 75% at fault, and that Woodland was 25% at fault. The jury awarded damages as follows:

| Economic Damages: | |
|---|---|
| a. Medical care/services - past | $3,500 |
| b. Medical care/services - future | 4,000 |
| c. Miscellaneous expense | 1,000 |
| d. Property damage | 2,000 |
| | |
| Non-Economic Damages: | |
| e. Pain and suffering - past | 5,000 |
| f. Pain and suffering - future | 5,000 |
| g. Permanent injury | 1,000 |
| h. Loss of the ability to enjoy life - past | 2,000 |
| i. Loss of the ability to enjoy life - future | 2,000 |
| | |
| Total for Bernice Walton Woodland | $25,500 |

Because Woodland was found to be 25% at fault, the total damage amount was discounted by that percentage, and Woodland was awarded a total of $19,125.[2] On September 3, 2004, the trial court entered a judgment on the verdict. On September 7, 2004, Thornton filed a motion to alter or amend the judgment, or for a new trial, claiming that there was no material evidence to support the amounts awarded. In the alternative, Thornton requested a remittitur, claiming that the evidence supported a judgment of no more than $8,515.35. On October 8, 2004, the trial court entered an order denying

---

[2]Woodland's husband was awarded $500 on his claim for loss of consortium, which was also discounted by 25% because of Woodland's comparative negligence.

Thornton's motion. From that order, Thornton now appeals. On appeal, Thornton challenges only the damage award and raises no issue as to liability.

When a trial judge has approved a jury's verdict, our standard of review is to determine whether there is any material evidence to support the verdict. *See* Tenn. R. App. P. 13(d); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). We do not determine where the preponderance of the evidence lies; rather, we must ascertain whether any material evidence in the record supports the jury verdict. *Overstreet*, 4 S.W.3d at 718. In making this determination, we are "required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary." *Mills v. Solomon*, 43 S.W.3d 503, 507-08 (Tenn. Ct. App. 2000) (quoting *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). Thus, absent a reversible error of law, we will set aside a judgment on a jury verdict only where the record contains no material evidence to support the verdict. *See Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988). We review the denial of a motion to alter or amend for an abuse of discretion. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003).

Thornton argues that the jury's award is not supported by the evidence at trial. She contends that, on Woodland's claim of economic damages, the evidence at trial supports an award of no more than $4,353, not the $10,500 found by the jury. As to the award for non-economic damages, Thornton asserts that there was no evidence that the automobile accident caused Woodland to have future pain and suffering, future loss of the ability to enjoy life, or permanent injury. We will address each element of damages in turn.

First, Thornton challenges the award of $3,500 for past medical care or services. She maintains that the only proof of Woodland's medical expenses resulting from the accident is contained in Exhibit 5. Exhibit 5 shows that Woodland incurred expenses for services rendered by Dr. Burnett in the amount of $460, by Methodist Fayette Hospital in the amount of $610.50, by Memphis Hospital North in the amount of $1,193.30, and by Memphis Neurological Association, P.C., in the amount of $140, all of which total $2,403.80. Because no other evidence of Woodland's medical expenses was submitted, Thornton argues, the trial court should have remitted the jury award to this amount on this element of damages. In response, Woodland claims that, in addition to Exhibit 5, Dr. Burnett testified in his deposition that he prescribed pain medications for Woodland and that she had those prescriptions filled. Woodland claims that, although no proof of the specific charges was introduced at trial, the jurors were permitted to award her damages for those expenses, using their common sense.

In a personal injury action, the plaintiff carries the burden at trial to prove, by a preponderance of the evidence, the amount of her damages. *Walker v. Sidney Galreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). The proof of damages need not be exact or mathematically precise, but the amount of the damages must be shown "with a reasonable degree of certainty which enables the trier of fact to make a reasonable assessment of the damages." *McMurry v. Metro. Gov't of Nashville*, No. M2000-02902-COA-R3-CV, 2003 WL 535918, at *9 (Tenn. Ct. App. Feb. 26, 2003)

(citing *Overstreet*, 4 S.W.3d at 703). Damages may not be based on "mere conjecture or speculation." *Id.* (citing *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 335 (Tenn. Ct. App. 1987) (quotation omitted)).

With respect to Woodland's past medical care or expenses, Exhibit 5 showed that she had expended $2,403.80 on her medical care. Although the evidence indicated that she may in addition have purchased pain medication, there was no evidence even estimating how much Woodland may have spent on such medication, nor was there evidence of any other medical expenditures. Under these circumstances, we must conclude that the trial court erred in failing to remit the jury's award on this element of damages to $2,403.80, to conform to the evidence presented at trial.

Thornton next challenges the $4,000 award to Woodland for future medical care or services. Thornton claims that there was absolutely no evidence introduced at trial as to this element of damages. In response, Woodland asserts that the deposition testimony of Dr. Burnett supports an award for future medical care, because he testified that Woodland's condition was chronic, and that she would continue to have pain in her neck for the rest of her life. From our review of Dr. Burnett's testimony, however, we find nothing to suggest how much, if any, of Woodland's future medical expenses would result from the accident. Thus, the jury's award for future medical expenses could only have been based on speculation and conjecture. Consequently, the jury's award of $4,000 for future medical care or services must be vacated.

Thornton also argues on appeal that the trial court erred in awarding Woodland $1,000 for miscellaneous expenses. She claims that the only evidence regarding Woodland's out-of-pocket losses, other than medical expenses, was the amount that Woodland paid to her daughter, Owen, for transportation for an approximate three-month period. Owen testified that her mother paid her in excess of $100, "closer to two [hundred dollars]," for the assistance she provided during the months immediately following the accident. Thornton argues that the miscellaneous damage award must be no more than this amount. In response, Woodland argues that, in her testimony, Owen was uncertain of what she was paid for her assistance to her mother. Woodland also notes that the evidence shows that other family members or friends drove her to physician appointments at times, and that she should be entitled to mileage expense for these trips to her medical providers. As we have noted, however, there must be at least some evidence to support Woodland's claim for miscellaneous expenses. Woodland can identify no evidence presented at trial to establish even an estimate of any expense other than the approximately $200 paid to her daughter. Thus, because there is no evidence to support an award in excess of $200, we find that the trial court erred in failing to remit the jury's award for miscellaneous expenses of $200.

Next, Thornton argues that there is no evidence to support the jury's award of $2,000 for property damage, because the parties stipulated that the amount of property damage was $1,750. Woodland argues that, considering the photographs of the car and the other evidence at trial, the jury was permitted to award more than the stipulated amount. We disagree. Even if the jury were permitted to ignore the parties' stipulation as to the value of Woodland's property damage, which it was not, Woodland was required to present at least some evidence of the monetary value of her

property damage in order to recover. *See Moyer v. Herman*, No. 87-119-II, 1987 WL 15472, at *2 (Tenn. Ct. App. Aug. 12, 1987) (holding that, even though the damage to the plaintiff's vehicle was shown by pictures and general descriptions, there must be evidence of a monetary value of the damage in order to recover). Therefore, we find that the trial court erred in failing to remit the jury's property damage award to $1,750.

With respect to non-economic damages, Thornton challenges the awards to Woodland that were based on future pain and suffering ($5,000), permanent injury ($1,000), and the future loss of the ability to enjoy life ($2,000).[3] Thornton claims that these elements of the jury's award were not supported by any material evidence, because there was no proof at trial indicating that the accident was the proximate cause of any future damage or permanent injury to Woodland. Thornton concedes that Woodland may be permanently damaged and that she may have future pain. She argues, however, that there is no proof that any permanent damage or future pain were caused by the accident. On the contrary, Thornton argues, when Dr. Burnett was asked in his deposition whether he thought that Woodland's condition was permanent, he responded, "Today the pain that she has, I can't say for sure is, you know, from the wreck, but it's going to be permanent." Also, the medical report by Dr. Lindermuth predicted that Woodland would recover "with no permanent impairment." In light of this evidence and the absence of any other proof of a causal connection, Thornton argues, we must vacate any award based on future non-economic damages.

In response, Woodland contends that Dr. Burnett's testimony and the other testimony at trial establish the requisite causal connection. Woodland argues that the evidence showed that she was an extremely active housewife before the accident, but that since the accident she has been unable to carry out all of her normal household duties. Woodland notes that Dr. Burnett characterized her condition as permanent, and predicted that she will probably always have pain in her neck. Because she was not in pain before the accident, but has continued to suffer pain since the accident occurred, Woodland contends, this is evidence that her problems more likely than not were caused by the accident.

In a negligence claim, the plaintiff has the burden of proving a causal connection between the negligence and the injury suffered. *See Begley v. State*, 162 S.W.3d 535, 543 (Tenn. Ct. App. 2004). Though causation must not be proven with absolute certainty, it cannot be based on mere conjecture or speculation. *See Porter v. Green*, 745 S.W.2d 874, 877 (Tenn. Ct. App. 1987). "Where a physician testifies concerning the physical condition, his opinion must be reasonably certain both as to the cause of the physical condition and its future effects." *Id.* The parties do not dispute that Dr. Burnett's testimony supports Woodland's assertion that she suffers from a permanent impairment and that she will likely have neck pain in the future. Dr. Burnett's testimony, however, simply does not support a finding that any permanent impairment or future pain was caused by the accident. Dr. Burnett candidly admitted that he "can't say for sure" that the chronic nature of Woodland's neck pain was caused by the accident, in light of her preexisting degenerative condition. Dr. Lindermuth

_____

[3]Thornton does not challenge the awards based on past pain and suffering ($5,000) or on the past ability to enjoy life ($2,000).

went further in stating his opinion that Woodland would have no permanent impairment, which tends to show that the accident did not cause any future pain or permanent impairment. There is no other expert testimony to support this element of damages. Therefore, the jury's award of $8,000 for future pain and suffering, future loss of enjoyment of life, and permanent injury must be vacated.

In sum, we conclude that the trial court erred in failing to remit the jury's damage award for past medical care or services, miscellaneous expenses, and property damage, and in failing to vacate the jury's award for future medical care or services, future pain and suffering, future loss of enjoyment of life and permanent injury. The remaining portions of the jury verdict were not challenged on appeal and, therefore, are affirmed.

The decision of the trial court is affirmed in part and reversed in part, as set forth above, and the cause is remanded for the trial court to enter a judgment modifying the jury verdict to conform to the evidence at trial, consistent with this Opinion. Costs on appeal are to be taxed to the Appellee Bernice Walton Woodland, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE